# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CINDY HARCUM, on Behalf of Herself and all Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 2020-0398-PAF |
| JOHN LOVOI, PAUL B. LOYD, JR., MICHAEL RALEIGH, ANTHONY TRIPODO, ROAN HOLDINGS, LLC, JVL ADVISORS, LLC, JOSEPH A. MILLS, and RICHARD GIDEON, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Date Submitted:  September 21, 2021
Date Decided:  January 3, 2022

Blake A. Bennett, COOCH AND TAYLOR, P.A., Wilmington, Delaware; Michael J. Palestina, KAHN SWICK & FOTI, LLC, New Orleans, Louisiana; Juan E. Monteverde, Miles D. Schreiner, MONTEVERDE & ASSOCIATES PC, New York, New York; *Attorneys for Plaintiff Cindy Harcum*.

Rolin P. Bissell, James M. Yoch, Jr., Alberto E. Chávez, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Michael C. Holmes, Virginia DeBeer, VINSON & ELKINS L.L.P., Dallas, Texas; *Attorneys for Defendants John Lovoi, Paul B. Loyd, Jr., Michael Raleigh, Joseph A. Mills, Anthony Tripodo, Richard Gideon, Roan Holdings, LLC, and JVL Advisors, LLC*.

**FIORAVANTI, Vice Chancellor**

Plaintiff Cindy Harcum, individually and on behalf of a purported class of former stockholders of Roan Resources, Inc. ("Roan" or the "Company"), seeks to recover damages for alleged breaches of fiduciary duties by certain officers, directors, and stockholders of the Company arising from a 2019 going-private merger (the "Merger"). In the Merger, Citizen Energy Operating, LLC ("Citizen Buyer") acquired the Company in an all-cash transaction through which Roan stockholders received the right to payment of $1.52 per share of their Roan common stock. Harcum, a former contract employee of Roan and a predecessor company, alleges the Merger was a scheme devised to transfer control of the Company to a few insiders for insufficient consideration. Plaintiff contends that persons and entities affiliated with defendant John Lovoi controlled the Company, stood on both sides of the transaction, and received unique benefits not shared with the remaining stockholders of the Company. Plaintiff also alleges that a subset of the Company's board of directors (the "Board") breached their fiduciary duties and made material misrepresentations and omissions in the proxy statement that was disseminated to stockholders to obtain their vote for the Merger. Plaintiff also alleges two of the Company's officers breached their fiduciary duties in connection with the proxy statement disclosures. The defendants have moved to dismiss the complaint in its entirety. This opinion grants that motion.

## I. BACKGROUND

The facts recited in this Memorandum Opinion are drawn from the Verified Amended Class Action Complaint (the "Complaint") and documents integral thereto or otherwise subject to judicial notice.[1]

### A. The Parties

Defendant JVL Advisors, LLC ("JVL") is a Texas limited liability company with its principal place of business located in Houston, Texas.[2] Defendant John Lovoi is JVL's founder and managing partner.[3] Defendant Roan Holdings, LLC ("Roan Holdings") is a Delaware limited liability company with its principal place of business in Houston, Texas.[4] At the time of the Merger, Roan Holdings owned 49.7% of Roan's outstanding common stock. Lovoi is alleged to have controlled Roan through his control over JVL, Roan Holdings, and his ownership of additional shares of Roan common stock that, when combined, amounted to over 50% of Roan's voting power.

Roan was formed in September 2018. It is a holding company for oil and gas assets and created through a joint venture between Linn Energy, Inc. ("LINN") and

---

[1] *See* DEL. R. EVID. 201.

[2] Dkt. 34, Verified Amended Class Action Complaint ("Compl.") ¶ 21.

[3] *Id.* ¶ 16.

[4] *Id.* ¶ 22.

Citizen Energy II, LLC ("Citizen II"). The Roan Board that approved the Merger consisted of eight members: Defendants Lovoi, Paul B. Loyd, Michael P. Raleigh, Anthony Tripodo ("the Director Defendants"), and Joseph A. Mills, and non-Defendants Andrew Taylor, Matthew Bonanno, and Evan Lederman.[5]

Mills was Roan's Executive Chairman and interim Principal Executive Officer from April 15, 2019 through September 29, 2019.[6] Mills is only being sued in his capacity as an officer and not as a director. Defendant Richard Gideon (with Mills, the "Officer Defendants") served as Roan's CEO from September 29, 2019 until December 6, 2019 (the Director Defendants, the Officer Defendants, Roan Holdings, and JVL, are hereinafter referred to as the "Defendants").[7]

Plaintiff Cindy Harcum was a contract employee of Roan and held stock in Roan throughout the time period when the Complaint alleges that wrongdoing occurred.[8]

## B.  Citizen II

In November 2014, James Woods, Robert Woodard, Gregory Augsburger, and JVL formed Citizen II.[9] Woods, Woodard, Augsburger (collectively, the

---

[5] *Id.* ¶¶ 16–19, 23, 30–32.

[6] *Id.*

[7] *Id.* ¶ 24.

[8] *Id.* ¶ 15.

[9] *Id.* ¶¶ 25, 49.

"Citizen Principals"), and "their personal network of investors" contributed approximately 76% of Citizen II's capital, while JVL contributed the remaining 24%.[10] Following recapitalizations in 2015 and 2016, JVL's contributions made up about 85% of Citizen II's total capital.[11] The Citizen II operating agreement provided for four managers: three "Management Representatives" and one "Investor Representative." The Citizen Principals were appointed as the three Management Representatives.[12] JVL, which was entitled to appoint the one Investor Representative, selected Kelly Loyd for that position.[13] Citizen II's operating agreement also provided the Citizen Principals with "incentive interests" if they were able to return the initial capital contributions to all of Citizen II's investors in addition to a 9% annual preferred return.[14] The Complaint does not describe or quantify these "incentive interests," but repeatedly refers to them.[15] In these early years Citizen II saw quick success, drilling over 60 horizontal wells, which produced 13,000 barrels of oil equivalent per day.[16]

---

[10] *Id.* ¶ 49.

[11] *Id.* ¶ 51, 54.

[12] *Id.* ¶ 50.

[13] *Id.*

[14] *Id.*

[15] *See id.* ¶¶ 50, 66, 74, 127.

[16] *Id.* ¶ 52.

In mid-2017, Citizen II and LINN, a publicly traded oil and gas company formed in a bankruptcy reorganization, entered into a joint venture (the "Joint Venture"). As part of the Joint Venture, Citizen II and LINN would combine their assets to develop 140,000 acres across three oil-rich formations in south and central Oklahoma.[17] Citizen II and LINN stated that they intended to take the Joint Venture public by early 2018.[18]

In light of these planned events, the Citizen Principals anticipated ceding managerial control of Citizen II; however, they would only do so on two conditions: (1) there would need to be a partial separation between investors affiliated with JVL ("JVL Investors") and those not affiliated with JVL ("Non-JVL Investors"), and (2) the Citizen Principals would need to retain representation on the future public company's board of directors.[19] At this time, Non-JVL Investors owned about 23.1% of Citizen II.[20]

### C. Roan LLC Is Formed in Anticipation of the Joint Venture.

On May 30, 2017, the Citizen Principals, JVL, Paul Loyd, Kelly Loyd, and Raleigh formed Roan Resources, LLC ("Roan LLC"), which was created to

---

[17] *Id.* ¶ 56.

[18] *Id.*

[19] *Id.* ¶ 57.

[20] *Id.*

eventually hold the Joint Venture's assets.[21]  On June 27, 2017, LINN and Citizen II announced that they had executed an agreement where each company would contribute certain upstream assets in Oklahoma to Roan LLC in exchange for respective 50% equity interests in Roan LLC.[22]  Each 50% equity interest was valued at approximately $1.3 billion.[23]  Woods and Woodard signed this agreement on behalf of both Citizen II and Roan LLC.[24]  The announcement also stated that Roan LLC would be focused on the development of the land that had already been targeted by the Joint Venture.[25]

On August 31, 2017, the Roan LLC operating agreement was amended to provide for an eight-member board.  Under the agreement, LINN and Citizen II would each elect half of these members.[26]  Citizen II initially appointed Woods, Woodard, James Bush, and Paul Loyd.[27]

---

[21] *Id.* ¶ 59.

[22] *Id.* ¶ 60.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* ¶ 61.

[27] *Id.*

**D. The Citizen Principals Negotiate a Separation Agreement with JVL**

Days after the signing of Roan LLC's Amended and Restated Limited Liability Company Agreement, JVL proposed transferring all of Citizen II's assets to Crazyhorse Holdings, LLC and Roan Holdings, two entities which had recently been created by JVL.[28] Roan Holdings' initial managers were Woods, Kelly Loyd, Paul Loyd, and Raleigh.[29] JVL asserted that it had the authority to effectuate the transfer because it controlled the majority of Citizen II's Class A units. Shortly thereafter, JVL transferred all of Citizen II's assets and units in Roan LLC to Roan Holdings.[30] JVL then informed the Citizen Principals of this development while also notifying them that it would be replacing Woodard, Augsburger, and Bush with Lovoi, Paul Loyd, and Raleigh as members of the Roan LLC board.[31]

On September 6, 2017, counsel for the Citizen Principals sent a letter to JVL asserting that the recent transfer of Citizen II's assets was a "sham that served no economic or business purpose other than stripping [the Citizen Principals] of their

---

[28] *Id.* ¶ 63.

[29] *Id.* ¶ 64.

[30] *Id.* ¶ 63.

[31] *Id.* The Complaint is inconsistent. In Paragraph 61, it alleges that the Citizen II appointees to the Roan LLC board were Woods, Woodard, Bush, and Paul Loyd, but in Paragraph 63 alleges that Augsburger was being removed from the Roan LLC board, even though there is no allegation that he ever served on that board.

bargained-for governance rights."[32] The Citizen Principals also contended that JVL "was engaging in self-dealing and other actions that were only in JVL's interests and not in the best interest of Citizen II . . . and that JVL's actions were in bad faith" and in breach of its fiduciary duties.[33]

On October 11, 2017, the Citizen Principals, JVL, and their affiliates entered into an Omnibus Separation Agreement (the "Separation Agreement").[34] Under the terms of the Separation Agreement, the Citizen Principals would convert their incentive interests in Citizen II into "a material portion of Citizen II's assets" that would be transferred into a new entity, Citizen Energy III, LLC ("Citizen III").[35] Plaintiff alleges that at that time "funds managed by JVL continued to have an interest" in Citizen III.[36] The Complaint contains no other allegations concerning these funds or the nature of the alleged interest.

The parties to the Separation Agreement also agreed to enter into a series of transactions, including a Second Amended & Restated LLC Agreement for Roan

---

[32] Compl. ¶ 65.

[33] *Id.*

[34] *Id.* ¶ 66. The parties to the Separation Agreement were Citizen II, Woods, Woodard, Augsburger, JVL, SPQR Energy, LP, and Citizen Energy Holdings, LLC ("Citizen Holdings"), which was an affiliate of Warburg Pincus, LLC ("Warburg Pincus"). *Id.*

[35] Compl. ¶ 66.

[36] *Id.* (italics omitted).

Holdings, LLC that was executed on November 1, 2017.[37]  Under that agreement, JVL was granted three seats on the Roan Holdings board of managers while the Non-JVL Investors were entitled to appoint one independent manager unless their collective ownership of Roan Holdings' Class A units fell below 10%.[38]  As of May 2, 2019, Non-JVL Investors owned more than 25% of these Class A units.[39]

## E.    Roan LLC Prepares to Go Public.

In March 2018, Roan Holdings and LINN discussed plans to take Roan LLC public by the end of 2018.[40]  In general terms, the plan contemplated LINN and Roan Holdings creating a public holding company for Roan LLC (the "Proposal").  LINN, which was already publicly traded, would reorganize itself to form Roan as a new publicly traded company with LINN's stockholders and Roan Holdings each owning half of Roan.[41]  Roan, in turn, would own Roan LLC in its entirety.[42]

Internal disputes continued on the Roan Holdings side of the Proposal.  Woods believed that the Non-JVL Investors in Roan Holdings should be allowed to own their interests in Roan LLC directly, rather than indirectly through their interests in

---

[37] *Id.* ¶ 68.

[38] *Id.*

[39] *Id.*

[40] *Id.* ¶ 70.

[41] *Id.*

[42] *Id.*

Roan Holdings.[43] Woods also contended that the Roan Holdings Second Amended & Restated LLC Agreement obligated "Roan Holdings and the Investor Managers" to nominate Woods "as the designee of the Non-JVL Members" on Roan's future board of directors.[44]

The dispute between Woods and JVL spilled over into a Roan Holdings board meeting in August 2018. During that meeting, JVL proposed that Roan Holdings appoint Lovoi, Paul Loyd, Raleigh, and Tripodo to the future Roan board of directors.[45] Woods protested and argued that he should be appointed as one of Roan's directors.[46] Woods, however, was ultimately outvoted by Paul Loyd, Kelly Loyd, and Raleigh, who approved JVL's proposal.[47]

### F. Roan LLC Goes Public

On September 18, 2018, Roan LLC was introduced to the public markets through a master reorganization agreement executed by LINN, Roan Holdings, and Roan LLC.[48] Under this agreement, LINN and Roan Holdings' respective 50% equity interests in Roan LLC were reorganized into the new company Roan, which

---

[43] *Id.* ¶ 71.

[44] *Id.*

[45] *Id.* ¶ 75.

[46] *Id.*

[47] *Id.*

[48] *Id.* ¶ 77.

10

acquired all of Roan LLC's consolidated interests.[49] Roan's Class A common stock was initially traded in the OTCQB market, and two months later began trading on the New York Stock Exchange.[50] Roan's Board originally consisted of eight directors, including four who were selected by JVL: Lovoi, Paul Loyd, Raleigh, and Tripodo.[51] JVL disbanded Roan LLC's board of managers after Roan went public.[52]

## G. Potential Acquirors Express Interest in Taking Roan Private

As early as April 1, 2019, potential buyers began expressing interest in purchasing Roan.[53] On April 15, a representative of Warburg Pincus, Citizen Holdings (to which Warburg Pincus had committed $300 million), and its wholly owned subsidiary Citizen Buyer (the "Acquirors"), approached Lovoi to request a meeting.[54] By this time, two other potential buyers had already expressed interest in an acquisition.[55] Also on April 15, Tony Maranto, Roan's Chairman of the Board,

---

[49] *Id.*

[50] *Id.* ¶¶ 77, 84.

[51] *Id.* ¶ 81.

[52] *Id.* ¶ 82.

[53] Dkt. 44, Ex. 5 ("Proxy") at 35.

[54] Compl. ¶¶ 88, 67. Citizen Buyer was thus also an affiliate of Warburg Pincus. *See id.* ¶ 35. Plaintiff does not allege that Woods, Woodard, or Augsburger had an equity interest in Citizen Buyer, but alleges they were either "leaders" or "principals." *E.g.*, *id.* ¶¶ 128 ("principals"), 131 ("leaders").

[55] *See* Proxy at 35.

President, and CEO, resigned.[56] Roan's press release announcing the resignation said it was not "the result of any dispute or disagreement with the Company or any matter related to the Company's operations, policies or practices."[57] Following Maranto's resignation, Mills became Roan's Executive Chairman and interim Principal Executive Officer.[58]

On April 17, 2019, a representative from Warburg Pincus had a conversation with Lovoi. During the conversation, the representative explained that Warburg Pincus and Citizen Buyer had a shared interest in pursuing an acquisition of Roan.[59] The next day, Citizen Buyer delivered an initial indication of interest to acquire Roan for $6.75 per share.[60]

Around this time, the Board began exploring a possible transaction for Roan. On April 23, 2019, the Company's management team interviewed several "leading investment banking firms" to assist Roan in reviewing the indications of interest that it had been receiving.[61] The Company eventually selected Citigroup Global Markets Inc. ("Citi") and Jeffries LLC ("Jeffries") to be its financial advisors regarding a

---

[56] Compl. ¶ 89.

[57] *Id.*

[58] *Id.* ¶¶ 89, 23.

[59] *Id.* ¶ 90.

[60] *Id.*

[61] Proxy at 36.

potential transaction.[62]  Between May and July, representatives of the Company or its financial advisors contacted 44 potential counterparties and entered into 20 confidentiality agreements at the Board's direction.[63]

On May 2, 2019, the Citizen Principals filed an arbitration action against JVL, Paul Loyd, Kelly Loyd, Raleigh, and Roan Holdings (the "Arbitration Action").[64] The Arbitration Action alleged that JVL, Paul Loyd, Raleigh, and Kelly Loyd "breached fiduciary duties they owed to Woods, Woodard, Augsburger and their associates" through "misusing [Woods, Woodard, and Augsburger's] assets to seize an effectively controlling interest of" Roan.[65]  The Arbitration Action also sought an order to compel Woods's appointment to Roan's Board.[66]  In its request for relief, the Arbitration Action sought dissolution of Roan Holdings or, alternatively, a distribution of its Roan stock to its members.[67]

Citizen Buyer's acquisition approach came as Roan's stock price had been steadily falling amid flagging oil prices.  On October 1, 2018, Roan closed at $18.49

---

[62] *Id.* at 3, 36.

[63] *Id.* at 38.

[64] Dkt. 42, Ex. 2 ("Arbitration Action") at 1–2; *see* Compl. ¶ 91.  The Complaint has incorporated the Arbitration Action by reference.

[65] Compl. ¶ 91 (italics and internal quotations omitted) (bracketing in original).

[66] *Id.*

[67] Arbitration Action at 16.

per share while oil was trading at $75.37 per barrel.[68] By January 2, 2019, Roan had lost over half its value, closing at $8.45 per share whereas oil was now trading at only $46.31 per barrel.[69] While oil prices somewhat recovered following the new year, trading as high as $66.24 on April 23, 2019, Roan's stock price did not follow suit.[70] On May 1, 2019, Roan closed at $5.42 per share.[71]

On May 3, 2019, Citizen Buyer sent a letter to the Board reiterating its proposal to acquire Roan at $6.75 per share.[72] In its letter, Citizen Buyer also noted that it "would be open to allowing certain qualified [Roan] stockholders . . . to roll over a portion of their equity interests" so long as Citizen Buyer's equity holders

---

[68] *Compare* Roan Resources Inc. Stock Price, STOCKINVEST.US, available at https://stockinvest.us/stock-price/ROAN?page=7 (last visited Dec. 27, 2021), *with* Crude Oil Prices, FRED ECONOMIC DATA, available at https://fred.stlouisfed.org/graph/?g=KhUv (last visited Dec. 27, 2021). The court may take judicial notice of these stock and oil prices because they are not subject to reasonable dispute. DEL. R. EVID. 201(b)(2); *Lee v. Pincus*, 2014 WL 6066108, at *4 n.11 (Del. Ch. Nov. 14, 2014).

[69] *Compare* Roan Resources Inc. Stock Price, STOCKINVEST.US, available at https://stockinvest.us/stock-price/ROAN?page=6 (last visited Dec. 27, 2021), *with* Crude Oil Prices, FRED ECONOMIC DATA, available at https://fred.stlouisfed.org/graph/?g=KhUv (last visited Dec. 27, 2021).

[70] Crude Oil Prices, FRED ECONOMIC DATA, available at https://fred.stlouisfed.org/graph/?g=KhUv (last visited Dec. 27, 2021).

[71] Roan Resources Inc. Stock Price, STOCKINVEST.US, available at https://stockinvest.us/stock-price/ROAN?page=4 (last visited Dec. 27, 2021).

[72] Compl. ¶ 93.

could maintain at least two-thirds ownership of the new company.[73]  On May 20, 2019, Roan announced that it had engaged financial advisors to assist it in evaluating strategic alternatives.[74]

Also on May 3, Roan Holdings, JVL, Kelly Loyd, Paul Loyd, and Raleigh responded to the Arbitration Action by filing a complaint seeking a declaratory judgment in this court (the "Declaratory Judgment Action").[75]  Specifically, the plaintiffs in the Declaratory Judgment Action requested that the court permanently enjoin the Arbitration Action,[76] and on June 11, 2019, the plaintiffs moved for expedited proceedings.[77]

Roan's stock price continued to decline through May and June.  On May 31, 2019, Roan closed at $2.09 per share.[78]  On June 13, Roan reached a new low for

---

[73] *Id.*  There is no allegation that any Roan stockholders rolled their equity interest into the new company.

[74] *Id.* ¶ 95.

[75] *See Roan Hldgs., LLC v. Woods*, C.A. No. 2019-0374-AGB, Dkt. 1; *see also* Compl. ¶ 94.  The Complaint has incorporated the Declaratory Judgment Action by reference.

[76] *Woods*, C.A. No. 2019-0374-AGB, Dkt. 3 at 26 ¶ B; *see also* Compl. ¶ 94.

[77] *See Woods*, C.A. No. 2019-0374-AGB, Dkt. 10; *see also* Compl. ¶ 94.  At an August 15, 2019 motions hearing, the court requested supplemental briefing.  *See Woods*, C.A. No. 2019-0374-AGB, Dkt. 41; *see also* Compl. ¶ 100.  On September 16, 2019, the parties to the Declaratory Judgment Action agreed to a stay until the Arbitration Action was resolved; neither party had submitted supplemental briefing since the August 15, 2019 hearing.  *See Woods*, C.A. No. 2019-0374-AGB, Dkt. 43; *see also* Compl. ¶ 103.

[78] Roan Resources Inc. Stock Price, STOCKINVEST.US, available at https://stockinvest.us/stock-price/ROAN?page=4 (last visited Dec. 27, 2021).

the year, closing at $1.16.[79]  On June 19, 2019, Roan and Citizen Buyer entered into a mutual confidentiality agreement; Roan's price remained virtually unchanged as the Company closed at $1.19 that day.[80]

Also on June 19, 2019, Roan entered into a $100 million term loan facility with lenders Elliott Management Corporation ("Elliott"), York Capital Management Global Advisors, LLC ("York"), and "funds affiliated with JVL" (the "Term Loan").[81]  Both Elliott and York owned Roan common stock when the Company agreed to the Term Loan.[82]  Under the Term Loan, Roan's repayment obligations would be accelerated upon a change of control transaction.[83]  Specifically, if a change of control were to occur, Roan would be required to pay the Term Loan's lenders:  (1) all accrued and unpaid interest; (2) a 1% repayment premium; and (3) if the Term Loan had been drawn for less than one year, the amount of interest that would have accrued if the amount borrowed had been outstanding for one year.[84]  Before agreeing to the Term Loan, Roan had a "special committee of disinterested

---

[79] *Id.*

[80] *Id.*

[81] Compl. ¶ 133.

[82] *Id.* ¶ 135.  At the Merger's signing, Elliott and York owned 10.6% and 6% of Roan common stock respectively.  Proxy at 115.

[83] Compl. ¶ 136.

[84] *Id.*

Board members" review and approve its terms.[85]  Plaintiff does not challenge the

Term Loan or allege that its terms were unfair to the Company.[86]  On June 26, Roan

drew down $50 million from the Term Loan to repay outstanding debt under a

revolving credit facility.[87]

## H.     Roan Considers Initial Proposals from Strategic Buyers.

On July 24, 2019, three potential strategic buyers submitted initial proposals

to Roan:  Company B, Company G, and Citizen Buyer.[88]  Company B proposed an

all-stock, merger of equals with Roan, where Roan's stockholders would receive

shares of Company B's common stock.[89]  Company B also proposed that it would

evenly split the new company's equity with Roan's stockholders.[90]  On August 1,

2019, the Board countered with terms that gave Roan's stockholders a 75% equity

stake in the new company.[91]  Company B responded by offering Roan's stockholders

60% of the new company, with a caveat that the new company would also have to

---

[85] Proxy at 76.

[86] This was confirmed by Plaintiff's counsel at oral argument.  Dkt. 58 ("Hrg."), 55:15–16 ("We're not challenging the terms of the loan.").

[87] Compl. ¶ 134.

[88] *Id.* ¶ 98.

[89] *Id.* ¶ 98(a).

[90] *Id.*

[91] *Id.*

raise $300 million to repay the two parties' combined debt.[92] The Board determined that the proposed equity raise was "unacceptable," and Company B consequently withdrew from consideration on August 15, 2019.[93]

Company G's proposal consisted of a stock-for-stock merger where the combined company would continue to be publicly traded and under the supervision of Company G's management.[94] This proposal did not contain details regarding an equity split among the stockholders of the two companies, but similar to Company B's proposal, required a $400 million equity raise by the combined company.[95] On September 12, 2019, Company G withdrew from consideration.[96]

Citizen Buyer's initial proposal was a cash offer to acquire Roan for $2.50 per share, significantly below its initial indication of interest in April of $6.75.[97] On August 16, 2019, Citizen Buyer lowered its offer to $1.75 per share and communicated shortly thereafter its desire to quickly finalize a transaction.[98] Both offers constituted significant premia compared to where Roan was trading. On July

---

[92] *Id.*

[93] *Id.*

[94] *Id.* ¶ 98(b).

[95] *Id.*

[96] *Id.*

[97] *Id.* ¶ 98(c).

[98] *Id.* ¶ 99.

24, when Citizen Buyer made its initial proposal, Roan closed at $1.20 per share; on August 16, Roan's price had fallen to $1.09 per share.[99]

On August 22, 2019, Roan submitted a counteroffer of $2.50 per share to Citizen Buyer's second proposal.[100] The next day, Citizen Buyer responded, saying that it would only pay as much as $1.85 per share and stressed that time was of the essence.[101] On August 26, 2019, the Board agreed to proceed at $1.85 per share.[102] On September 26, Citizen Buyer reduced its offer to $1.50 per share.[103] Eventually, the Board and Citizen Buyer settled on a price of $1.52 per share.[104]

## I.     The Merger Agreement Is Signed

On October 1, 2019, the Roan Board held a meeting where Citi and Jeffries separately presented their financial analyses and stated that the merger consideration that Roan's stockholders would be receiving was "fair, from a financial point of view, to such holders."[105] During the same meeting, and following the presentations by Citi and Jeffries, the Board unanimously voted to approve the Agreement and

---

[99] Roan Resources Inc. Stock Price, STOCKINVEST.US, available at https://stockinvest.us/stock-price/ROAN?page=3 (last visited Dec. 27, 2021).

[100] Compl. ¶ 101.

[101] *Id.*

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] Proxy at 49–50.

Plan of Merger (the "Merger Agreement").[106]  Later that morning, before the U.S. markets had opened, Roan and Citizen Buyer issued a joint press release announcing the Merger.[107]  The previous day, Roan's stock closed at $1.23 per share.[108] Stockholders who held approximately 77% of Roan's common stock entered into agreements with Citizen Buyer in which they agreed to vote in favor of the Merger.[109]  Among those stockholders were Lovoi, Elliott, and York.[110]  Also on October 1, the Board approved Gideon's hiring as CEO, which was to be effective as of September 29.[111]  In the press release announcing the Merger, the Company disclosed Gideon's hiring, noting that he had been a former LINN executive.[112]  The press release also stated that Mills had ceased to be an officer of the Company, but

---

[106] *Id.* at 50.

[107] *Id.*

[108] Roan Resources Inc. Stock Price, STOCKINVEST.US, available at https://stockinvest.us/stock-price/ROAN?page=2 (last visited Dec. 27, 2021).

[109] Compl. ¶ 109.

[110] *Id.*

[111] *Id.* ¶ 107.  On August 27, 2019, the Board decided to hire Gideon as CEO, contingent on the Merger's completion.  *Id.* ¶ 102.

[112] *See* Roan Resources, Inc., Current Report (Form 8-K) (October 1, 2019) at 5, available at https://www.sec.gov/Archives/edgar/data/0001326428/000119312519259889/d808728d8 k.htm.  The court may consider this press release, which is referenced in the Complaint. *See* Compl. ¶ 107.

would remain as a director.[113] On October 9, 2019, the parties to the Declaratory Judgment Action agreed to dismiss the action with prejudice.[114]

On November 4, 2019 the Company filed a proxy statement with the United States Securities and Exchange Commission soliciting stockholder approval of the Merger (the "Proxy"). On November 27, 2019, the Company filed a supplement to the Proxy in response to multiple federal securities class action lawsuits challenging the Merger (the "Supplement").[115] The Company's stockholders overwhelmingly approved the Merger on December 4, 2019.[116] The Merger closed two days later.[117]

## J. Procedural History

On May 22, 2020, Plaintiff filed her initial complaint.[118] In the initial complaint, Plaintiff alleged that all of Roan's eight directors that approved the Merger Agreement—as opposed to the four Director Defendants named in the amended complaint—had breached their fiduciary duties to the Company's

---

[113] *Id.*

[114] *See Woods*, C.A. No. 2019-0374-AGB, Dkt. 45; Compl. ¶ 108.

[115] *See* Dkt. 44, Ex. 7 ("Supplement") at 2.

[116] Compl. ¶ 110; Dkt. 44, Ex. 8. There were 136,875,069 votes cast in favor of the Merger, while 540,446 shares voted against the Merger. Dkt. 44, Ex. 8. There were 21,567 shares that abstained. *Id.* According to the Proxy, there were 154,333,746 shares issued and outstanding and entitled to vote on the Merger. Proxy at 2. Thus, over 88% of all eligible shares were voted in favor of the Merger.

[117] Compl. ¶ 110.

[118] *See* Dkt. 1.

21

stockholders or aided and abetted others in so doing.[119]  The initial complaint also alleged that Elliott and York were two of Roan's controlling stockholders that were liable for breaches of fiduciary duty.[120]  Plaintiff's initial complaint also asserted that Warburg Pincus, Citizen Buyer, and Citizen Energy Pressburg, Inc. (Citizen Buyer's acquisition vehicle) aided and abetted all eight directors in their breaches of fiduciary duty.[121]

On September 28, 2020, Plaintiff filed an amended complaint containing three causes of action, which this opinion refers to as Counts I through III.[122]  Count I alleges that the four Director Defendants breached their fiduciary duties by engaging in a sale process that ultimately undervalued the Company in exchange for benefits that were unique to them.[123]  Additionally, Plaintiff alleges that the Director Defendants failed to provide the Company's stockholders with "all material information necessary to cast an informed vote on the Merger" via a deficient Proxy.[124]  In Count II, Plaintiff alleges that Lovoi, JVL, Paul Loyd, Raleigh, and Roan Holdings violated their fiduciary duties to the Company in their capacity as

---

[119] *Id.* ¶¶ 8–15, 84–88.

[120] *Id.* ¶¶ 21, 89–90.

[121] *Id.* ¶¶ 22–25, 110–13.

[122] *See* Dkt. 34.

[123] *See* Compl. ¶¶ 158–62.

[124] *Id.* ¶ 161.

controlling stockholders based on a nearly identical theory to that alleged in Count I.[125] Count III alleges that Gideon and Mills breached their fiduciary duties in their capacities as officers of the Company.[126] Specifically, Plaintiff alleges that Mills and Gideon failed to ensure that the Proxy disclosed all material information to Roan's stockholders, and thus, the stockholders could not make a fully-informed vote on the proposed Merger.[127]

---

[125] *See id.* ¶¶ 163–67.  Plaintiff asserts the same theory in two of her substantive counts. *Compare* Compl. ¶ 161:

> In addition, by agreeing to the Merger, the Director Defendants capped the price of ROAN's stock at a price that did not adequately reflect ROAN's true value.  Moreover, the Director Defendants failed to sufficiently inform themselves of ROAN's value, or disregarded the true value of the company, in an effort to benefit themselves,

*with* Compl. ¶ 166:

> In addition, by agreeing to the Merger, Lovoi/JVL, Paul Loyd, Raleigh, and Roan Holdings capped the price of ROAN stock at a price that did not adequately reflect its true value.  Moreover, Lovoi/JVL, Paul Loyd, Raleigh, and Roan Holdings failed to sufficiently inform themselves of ROAN's value, or disregarded the true value of ROAN, in an effort to benefit themselves.

Plaintiff seems to have merely recycled the claim from an entirely different complaint. *See In re Saba Software, Inc. S'holder Litig.*, 2017 WL 1201108, at *18 (Del. Ch. Mar. 31, 2017), *as revised* (Apr. 11, 2017) (quoting the complaint):

> In addition, by agreeing to the Merger, the Individual Defendants capped the price of Saba stock at a price that does not adequately reflect the Company's true value.  Moreover, the Individual Defendants disregarded the true value of the Company, in an effort to benefit themselves.

[126] *See* Compl. ¶¶ 168–73.

[127] *Id.* ¶ 173.

23

On October 12, 2020, Defendants filed a motion to dismiss the Complaint.[128]

Following briefing,[129] the court heard argument on Defendants' motion on September 21, 2021.

## II. ANALYSIS

On a motion to dismiss for failure to state a claim under Court of Chancery Rule 12(b)(6):

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and ([iv]) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.

*Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (internal citations and quotation marks omitted). Although the pleading standards are minimal, *Central Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011), "a trial court is required to accept only those 'reasonable inferences that logically flow from the face of the complaint' and 'is not required to accept every strained interpretation of the allegations proposed by the plaintiff,'" *In re Gen.*

---

[128] *See* Dkt. 36. Gideon was not included in this motion, but subsequently moved to dismiss the Complaint on October 27, 2020. *See* Dkt. 40.

[129] *See* Dkt. 41, Defendants' Opening Brief in Support of Motion to Dismiss Verified Amended Class Action Complaint ("Defs.' Op. Br."); Dkt. 48, Brief in Opposition to Defendants' Motion to Dismiss the Verified Amended Class Action Complaint ("Pl.'s Ans. Br."); Dkt. 49, Defendants' Reply Brief in Support of Motion to Dismiss Verified Amended Class Action Complaint ("Defs.' Reply Br.").

*Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)). The court need not "simply accept conclusory allegations unsupported by specific facts, nor . . . draw unreasonable inferences in the plaintiff's favor." *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009). "Moreover, a claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law." *Malpiede*, 780 A.2d at 1083.

The Complaint asserts claims against three groups of defendants: the Director Defendants (Lovoi, Paul Loyd, Raleigh, and Tripodo); the "Alleged Controllers" (Lovoi, JVL, Roan Holdings, Paul Loyd, and Raleigh); and the Officer Defendants (Mills and Gideon). I first address Plaintiff's claims against the alleged controlling stockholders. Next, I consider Defendants' argument that the Merger was approved by a fully informed and uncoerced majority of Roan's stockholders and, thus, was cleansed under *Corwin v. KKR Financial Holdings LLC*, 125 A.3d 304, 312 (Del. 2015). I then address the fiduciary duty claims against the Director Defendants and the Officer Defendants.

## A. The Standards of Review and Exculpation

"Delaware's default standard of review is the business judgment rule." *Frederick Hsu Living Tr. v. ODN Holding Corp.*, 2017 WL 1437308, at \*25 (Del. Ch. Apr. 14, 2017). Under this deferential standard, the court examines whether a

business decision "was rational in the sense of being one logical approach to advancing the corporation's objectives." *Id.* (internal citations omitted).

Delaware's most stringent standard—entire fairness review—will override the business judgment rule "when the board labors under actual conflicts of interest." *In re Trados Inc. S'holder Litig.* ("*Trados II*"), 73 A.3d 17, 44 (Del. Ch. 2013). It also applies if the plaintiff demonstrates that a transaction involves a conflicted controller. *Tornetta v. Musk*, 250 A.3d 793, 798, 800 (Del. Ch. 2019). If entire fairness applies, the defendants must establish that the transaction was the product of fair dealing and fair price. *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1163 (Del. 1995).

Between business judgment and entire fairness lies an intermediate standard of enhanced scrutiny. Under that standard, the fiduciaries must establish the reasonableness of their actions. *See Firefighters' Pension Sys. of City of Kansas City, Missouri Tr. v. Presidio, Inc.*, 251 A.3d 212, 249 (Del. Ch. 2021) ("Framed generally, enhanced scrutiny requires that the fiduciary defendants 'bear the burden of persuasion to show that their motivations were proper and not selfish' and that 'their actions were reasonable in relation to their legitimate objective.'" (quoting *Mercier v. Inter-Tel (Del.), Inc.*, 929 A2d 786, 810 (Del. Ch. 2007)). Enhanced scrutiny applies in the sale of a corporation for cash. *See Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986); *In re Mindbody, Inc.*, 2020 WL

26

5870084, at \*13 (Del. Ch. Oct. 2, 2020) (observing that a "cash-for-stock Merger [is] a final-stage transaction presumptively subject to enhanced scrutiny under *Revlon*"). In this context, the directors must establish both the reasonableness of their decision-making process and the reasonableness of their action in light of the existing circumstances. *Paramount Commc'ns, Inc. v. QVC Network, Inc.*, 67 A.2d 34, 45 (Del. 1994); *Presidio*, 251 A.3d at 249.

As Vice Chancellor Laster recently discussed in *Presidio*, even when a higher standard of review is employed to evaluate a fiduciary's conduct, the failure to meet that standard "does not lead ineluctably to liability for the fiduciaries who made the decision." *Presidio*, 251 A.3d at 250. Thus, even where entire fairness or enhanced scrutiny applies, "a plaintiff can recover monetary damages for a breach of the duty of loyalty only by proving that the fiduciary harbored self-interest adverse to the stockholders' interests, acted to advance the self-interest of an interested party . . . , or otherwise acted in bad faith." *Id.* at 253 (quotations and bracketing omitted). To recover damages for a breach of the duty of care, the plaintiff must establish that the fiduciary was grossly negligent. *Id.* And, as here, where the corporation's certificate of incorporation contains an exculpatory provision adopted pursuant to 8 *Del. C.*

27

§ 102(b)(7),[130] no monetary liability can be had against the directors for any breach of the duty of care. *Corwin*, 125 A.3d at 312. Thus, to survive a motion to dismiss, Plaintiff's claims against the Director Defendants must allege that these defendants either breached their respective duties of loyalty or acted in bad faith. *See In re Essendant, Inc. S'holder Litig.*, 2019 WL 7290944, at *7 (Del. Ch. Dec. 30, 2019) (citing *In re Cornerstone Therapeutics Inc, S'holder Litig.*, 115 A.3d 1173, 1175, 1179–80 (Del. 2015)).

### B.    Does the Complaint State a Claim for Breach of Fiduciary Duty by a Conflicted Controlling Stockholder?

Count II alleges that Lovoi, JVL, Roan Holdings, Paul Loyd, and Raleigh *i.e.*, the Alleged Controllers, breached their fiduciary duties as controlling stockholders of Roan and their conduct is subject to entire fairness review. The Defendants have moved to dismiss for failure to state a claim. Their primary defense relies upon *Corwin* cleansing. Plaintiff argues that *Corwin* is inapplicable, and even if it were applicable, Defendants cannot satisfy it.

Under *Corwin*, "when a transaction not subject to the entire fairness standard is approved by a fully informed, uncoerced vote of the disinterested stockholders,

---

[130] Dkt. 42, Ex. 1 art. IX. The court can take judicial notice of the Company's certificate of incorporation in deciding a motion to dismiss. *McPadden v. Sidhu*, 964 A.2d 1262, 1273 n.28 (Del. Ch. 2008).

the business judgment rule applies." *Corwin*, 125 A.3d at 309. *Corwin* cleansing is available only if the transaction is not subject to the entire fairness standard *ab initio*. *Larkin v. Shah*, 2016 WL 4485447, at *13 (Del. Ch. Aug. 15, 2016). "A transaction involving a non-conflicted controlling stockholder is subject to *Corwin* cleansing." *Presidio*, 251 A.3d at 254–55. Therefore, as to Count II, the threshold issue is whether *Corwin* cleansing is available. That issue turns on whether the Merger involved a conflicted controlling stockholder. Thus, I will determine the applicability of entire fairness *ab initio*, which, if applicable, would preclude *Corwin* cleansing. In the below analysis, I will consider whether the Complaint alleges facts from which it is reasonably conceivable that (1) at least one of the Alleged Controllers was a controlling stockholder, and (2) if so, were they conflicted as to the Merger. *See In re Crimson Expl. Inc. S'holder Litig.*, 2014 WL 5449419, at *14 (Del. Ch. Oct. 24, 2014).

### 1. The Controller Theories

"Under Delaware law, a controller owing fiduciary duties arises in two circumstances: (1) the alleged controller owns more than 50% of the voting power of a corporation or (2) owns less than 50% of the voting power of the corporation but exercises control over the business affairs of the corporation." *In re Vaxart, Inc. S'holder Litig.*, 2021 WL 5858696, at *15 (Del. Ch. Nov. 30, 2021) (quoting *In re GGP, Inc. S'holder Litig.*, 2021 WL 2102326, at *12 (Del. Ch. May 25, 2021))

(internal quotations omitted). In the latter circumstance, the plaintiff must plead facts to support a reasonable inference that the defendant either controlled (1) "the corporation's business affairs in general" or (2) "the corporation specifically for purposes of the challenged transaction." *Voigt v. Metcalf*, 2020 WL 614999, at *11 (Del. Ch. Feb. 10, 2020).

Plaintiff asserts that she has alleged sufficient facts to find all five Alleged Controllers were controlling stockholders under both prongs of the test. First, Plaintiff contends that Lovoi owns a majority of Roan's voting power *i.e.*, *de jure* control.[131] Second, Plaintiff argues that the "Alleged Controllers collectively exercised *de facto* control over the Company, even if their combined ownership of Roan did not exceed 50%.[132]

Plaintiff argues that Lovoi owned a majority of Roan after aggregating his various holdings. Plaintiff points to the Proxy as the basis for this allegation. The relevant portion of the Proxy states:

> JVL indirectly and beneficially owns approximately a 74.14% interest in Roan Holdings and has a contractual right to appoint a majority of the members of the board of managers of Roan Holdings. Mr. Lovoi may be deemed to share dispositive power over the securities held directly and indirectly by JVL, Roan Holdings and other entities

---

[131] Pl.'s Ans. Br. 16.

[132] *Id.*

managed by JVL and may therefore be deemed to be the beneficial owner of these shares of Company Common Stock.[133]

Based on the Proxy, Plaintiff asserts that because JVL was entitled to appoint a majority of the members of the Roan Holdings board of managers, Lovoi effectively controlled Roan Holdings through his control of JVL. According to Plaintiff, Roan Holdings owned 49.7% of Roan's common stock, which Lovoi ultimately controlled.[134] When combined with additional Roan stock held by other entities under Lovoi's control, Lovoi controlled 50.8% of Roan's voting power.[135]

Defendants do not dispute this contention. Defendants concede, for purposes of this motion, that Lovoi was Roan's controlling stockholder.[136] Therefore, at this stage of the proceedings, it is reasonably conceivable that Lovoi was a controller of Roan.

Plaintiff also alleges that JVL, Roan Holdings, Paul Loyd, and Raleigh "were each beneficial owners of the same 49.7% block of [Roan] stock" that was owned by Roan Holdings.[137] Again, Plaintiff points to the Proxy in support of her allegation:

---

[133] Proxy at 71; *see* Compl. ¶ 121.

[134] Compl. ¶ 120.

[135] *Id.* ¶ 122.

[136] *See* Defs.' Op. Br. 24–25; Defs.' Reply Br. 7; Hrg. 8:22–9:8.

[137] Pl.'s Ans. Br. 16; *see* Compl. ¶ 120.

In addition to being directors of the Company, Messrs. Loyd and Raleigh are members of the board of managers of Roan Holdings, appointed to such position by JVL pursuant to JVL's contractual right to appoint a majority of the members of the board of managers of Roan Holdings. Messrs. Loyd and Raleigh may be deemed to share dispositive power over the securities held by Roan Holdings and may therefore be deemed to be beneficial owners of these shares of Company Common Stock.[138]

Under both of Plaintiff's controlling stockholder theories—which are not pled alternatively—five persons (both natural and corporate) are each individual controlling stockholders.[139] Plaintiff cites no authority and no facts to support her contention that Paul Loyd or Raleigh was a controlling stockholder of Roan or that they were, collectively with Lovoi, controlling stockholders. At oral argument, Plaintiff's counsel conceded that the only basis for alleging that Raleigh and Paul Loyd were controlling stockholders is their having been designated as directors by

---

[138] Proxy at 71; *see* Compl. ¶ 121.

[139] At oral argument, Plaintiff's counsel alluded to pleading a control group. Hrg. 58:4–12. But neither the Complaint nor Plaintiff's briefing on this motion addresses such a theory. To have adequately pleaded a control group, Plaintiff would have had to demonstrate that the Alleged Controllers were "connected in some legally significant way—such as by contract, common ownership, agreement, or other arrangement—to work together toward a shared goal." *Sheldon v. Pinto Tech. Ventures, L.P.*, 220 A.3d 245, 251–52 (Del. 2019) (internal quotations omitted). Plaintiff must have alleged "more than a mere concurrence of self-interest among" the Alleged Controllers; "there must [have been] some indication of an actual agreement." *Id.* at 252 (internal quotations omitted). Plaintiff has not alleged that the Alleged Controllers had an agreement to exert their collective power toward a share goal. Just as a plaintiff may not amend her complaint through her brief, *California Pub. Emps.' Ret. Sys. v. Coulter*, 2002 WL 31888343, at *12 (Del. Ch. Dec. 18, 2002), she may not do so at oral argument.

Lovoi.[140]  The Complaint does not allege that Raleigh and Paul Loyd are part of a "control group."  Nor does the Complaint allege facts that would support their being considered part of a control group.  Plaintiff offers no legal support for the assertion that a director becomes a controlling stockholder merely because he or she is designated by a controlling stockholder.  I reject this unsupported theory.  *See Frank v. Elgamal*, 2014 WL 957550, at \*22 (Del. Ch. Mar. 10, 2014) ("Merely because a director is nominated and elected by a large or controlling stockholder does not mean that he is necessarily beholden to his initial sponsor.").

As for JVL and Roan Holdings, the Complaint alleges they each own 49.7% of Roan's voting power.  For purposes of this decision, I need not decide whether Plaintiff has alleged facts to support a reasonable inference that JVL and Roan Holdings are also controlling stockholders of Roan.  Even assuming that they are, and owed fiduciary duties to Plaintiff, the Complaint does not state a claim against them for breach of fiduciary duty.[141]

---

[140] Hrg. 58:4–11 ("So the controllers we're focusing is Mr. Lovoi, JVL, and the two designee directors, Mr. Raleigh and Mr. Loyd, and I think that's who we referred to as the control group, and I think JVL and Lovoi are the easier . . . it's easier to check the box with them too, and Raleigh and Loyd I think is just by designation that we're including them.").

[141] Plaintiff's authority for her *de facto* control theory is inapposite.  While the minority stockholders in Plaintiff's cited cases were found to be controllers, they were all also found to have dominated their respective corporations or boards of directors.  In this case, Plaintiff does not explain how the Alleged Controllers under her *de facto* theory dominated the Board.  *See FrontFour Cap. Grp. LLC v. Taube*, 2019 WL 1313408, at \*22 (Del. Ch. Mar. 11, 2019) ("[plaintiff] has proven that at least half of the Special Committee members

33

### 2. The Alleged Conflicts

The presence of a controller during a transaction will not trigger entire fairness review on its own; the controller must be conflicted as well. *Crimson*, 2014 WL 5449419, at *12. "A controller engages in a conflicted transaction when (1) the controller stands on both sides; or (2) the controller competes with the common stockholders for consideration." *In re Viacom Inc. S'holders Litig.*, 2020 WL 7711128, at *11 (Del. Ch. Dec. 29, 2020) (internal quotations omitted). The court has identified three examples within this latter category: "(1) where the controller receives greater monetary consideration for its shares than the minority stockholders; (2) where the controller takes a different form of consideration than the minority stockholders; and (3) where the controller gets a unique benefit by extracting

---

were not independent from the [controllers]"); *In re Zhongpin Inc. S'holders Litig.*, 2014 WL 6735457, at *9 (Del. Ch. Nov. 26, 2014) (finding that the controller "possessed active control over [the company's] day-to-day operations" and that the company "relied so heavily on him to manage its business and operations that his departure from [the company] would have had a material adverse impact on the [c]ompany"), *rev'd on other grounds*, *sub nom. In re Cornerstone Therapeutics Inc, S'holder Litig.*, 115 A.3d 1173 (Del. 2015); *Williamson v. Cox Commc'ns, Inc.*, 2006 WL 1586375, at *5 (Del. Ch. June 5, 2006) (reasonable to infer controllers where the corporation "depended on their cooperation" because they were its "only significant customers" and held veto power over the board's decision making); *Calesa Assocs., L.P. v. Am. Cap., Ltd.*, 2016 WL 770251, at *10 (Del. Ch. Feb. 29, 2016) ("Plaintiffs have pled sufficient facts to demonstrate that a majority of the Board was under the actual control and influence of ACAS"). Here, Plaintiff has not shown how Paul Loyd or Raleigh could have individually dominated Roan or its Board. Rather, under her *de jure* theory of control, Lovoi was able to exert control over the other Alleged Controllers. Therefore, Plaintiff's *de facto* control theory is not reasonably conceivable.

34

something uniquely valuable to the controller, even if the controller nominally receives the same consideration as all other stockholders." *IRA Tr. FBO Bobbie Ahmed v. Crane*, 2017 WL 7053964, at \*6 (Del. Ch. Dec. 11, 2017) (internal quotations and citations omitted). A complaint pleading the latter category must also allege an improper diversion of consideration that would otherwise have gone to the stockholders. *In re Martha Stewart Living Omnimedia, Inc. S'holder Litig.*, 2017 WL 3568089, at \*13 & n.50 (Del. Ch. Aug. 18, 2017).

Here, Plaintiff contends that the Alleged Controllers were conflicted because they stood on both sides of the Merger *and* stood to gain unique benefits to the exclusion of the other stockholders. I have already determined that Paul Loyd and Raleigh are not controlling stockholders. Therefore, I address Plaintiff's controlling stockholder theory as to Lovoi, JVL, and Roan Holdings.

### a. Lovoi, JVL, and Roan Holdings Did Not Stand on Both Sides of the Merger.

Plaintiff argues that Lovoi, JVL, and Roan Holdings stood on both sides of the transaction, but they make no allegation that any of those defendants had any financial interest in Citizen Buyer. Instead, they conjure theories that are unsupported. First, Plaintiff argues that Lovoi, JVL, and Roan Holdings were on both sides of the transaction because Woods, Woodard, and Augsburger are members of Roan Holdings, Woods serves as one of its four managers, and they had

"a direct say in how its 49.7% block [of Roan stock] was voted."[142]  But this theory is directly contradicted by the allegation that Lovoi and JVL control Roan Holdings. It is also contradicted by the allegations that Woods, Woodard, and Augsburger were being marginalized by Lovoi and JVL in Roan Holdings.  Thus, it is not reasonably conceivable that Lovoi, JVL, or Roan Holdings stood on both sides of the transaction on this theory.

Second, the mere fact that Woods, Woodard, and Augsburger were affiliated with Citizen Buyer, placing them on the buy side of the Merger, does not place Lovoi, JVL, and Road Holdings on the buy side, too.  Again, Plaintiff cites no persuasive factual or legal argument to support this theory.  The allegation that JVL and Lovoi had a prior history of co-investment with Woods, Woodard, and Augsburger does not place JVL and Lovoi on the other side of the Merger.

Third, the fact that Lovoi and/or JVL may have owed fiduciary duties to Woods, Woodard, and Augsburger as members of Roan Holdings does not create a dual fiduciary conflict.  The duties owed to Woods, Woodard, and Augsburger were in their capacities as members of Roan Holdings.  Roan Holdings' only asset was its interest in Roan.

---

[142] Pl.'s Ans. Br. 21.

### i. Lovoi, JVL, and Roan Holdings Did Not Have a Dual Fiduciary Conflict

A dual fiduciary conflict exists if an individual owes multiple fiduciary obligations and the interests associated with those obligations are not aligned. *Trados II*, 73 A.3d at 46–47. Plaintiff contends that Lovoi "owed conflicting contractual and fiduciary duties to both Citizen Buyer's Principal's [*sic*] and [Roan's] stockholders, creating a classic dual fiduciary conflict and [] causing [him] to stand on both sides of the Merger."[143] Plaintiff cites to three sets of facts in the Complaint in support of her theory. First, Woods was one of Roan Holdings' four managers.[144] Second, the Arbitration Action alleges that Lovoi owed a fiduciary duty to Woods, Woodard, Augsburger, and Roan Holdings.[145] Third, Lovoi owed a fiduciary duty to Roan's stockholders as Roan's controller.[146] It is unclear, though, how these facts show that Lovoi's fiduciary duties were misaligned on the buy side of the transaction.

The claimants in the Arbitration Action alleged that Lovoi and the other respondents breached their fiduciary duties to Roan Holdings and its members,

---

[143] Pl.'s Ans. Br. 24.

[144] *Id.* (citing Compl. ¶¶ 64, 68, 128).

[145] *Id.* (citing Compl. ¶¶ 65, 91); Arbitration Action at 15.

[146] Pl.'s Ans. Br. 24 (citing Compl. ¶¶ 16–18, 21–22).

which included the Citizen Principals.[147]  The Arbitration Action thus alleges that Lovoi owed the Citizen Principals a fiduciary duty through their membership in Roan Holdings, not via their affiliation with Citizen Buyer or any of its affiliates. Additionally, Roan Holdings was on the same side of the Merger as Roan through its 49.7% ownership stake in the Company, aligning the two entities' respective interests.  Therefore, neither Lovoi, JVL, nor Roan Holdings had a dual fiduciary conflict vis a vis the Merger.  *See, e.g.*, *Trados II*, 73 A.3d at 46–47 (holding that seller's directors were conflicted dual fiduciaries where those directors were also partners in funds that were invested in seller and received liquidation preferences during merger).

### ii.　Lovoi, JVL, and Roan Holdings' Purported Financial Interests in Citizen Buyer

Plaintiff next argues that Lovoi, JVL, and Roan Holdings were on both sides of the Merger because unspecified funds managed by JVL had some preexisting, unspecified "interest" in a Citizen affiliate.[148]  This does not create a pleadings-stage inference that Lovoi, JVL, or Roan Holdings stood on both sides of the Merger. Plaintiff asserts that to be considered on both sides of the transaction, "a controller need merely have an economic interest in the buyer—not be its owner or controller

---

[147] *See* Arbitration Action at 15, 10, 6.

[148] Compl. ¶ 66.

as well."[149]  The cases upon which Plaintiff relies do not support her allegations in this case.

In *William Penn Partnership v. Saliba*, 13 A.3d 749, 752 (Del. 2011), the conflicted fiduciaries owned 50% of the equity of the seller, served as its managing partners, owned 40% of the acquiror, and formed a majority of the acquiror's board of directors.  Similarly, in *In re BGC Partners, Inc. Derivative Litigation*, 2019 WL 4745121 (Del. Ch. Sept. 30, 2019), defendant Howard Lutnick and two affiliates owned 60% of the voting power of the buyer, controlled an affiliate of the seller, and Lutnick "personally stood to receive almost 47% of every dollar that [the buyer] allegedly overpaid for [the asset] because Lutnick's economic interest in [the affiliate of the seller] far exceeded his economic interest in [the buyer]."  *Id.* at *9. Contrary to Plaintiff's assertions, and unlike in *BGC*, Plaintiff has not shown that Lovoi sits "on top of a complicated web of affiliated entities and appear[s] on both sides of the Transaction."[150]  *Cf. id.* at *2 (explaining that Lutnick sat "on top of a complicated web of affiliated entities and appear[ed] on both sides of the Transaction").

In *Katell v. Morgan Stanley Group, Inc.*, 1993 WL 10871 (Del. Ch. Jan. 14, 1993), Morgan Stanley was "presumed interested, since it allegedly appeared on

---

[149] Pl.'s Ans. Br. 28.

[150] *See id.* at 29; Hrg. 51:2–10.

both sides of the transaction," but only because it "was not only involved in the . . . transaction as the seller, but had affiliates involved as the buyers." 1993 WL 10871, at *5. Here, Plaintiff has not alleged that Citizen Buyer is a Lovoi, JVL, or Roan Holdings affiliate.

Unlike in *Saliba*, *BGC*, and *Katell*, there are no allegations that Lovoi, JVL, or Roan Holdings were buyers or managers of Citizen Buyer. There are no allegations that Lovoi, JVL, or Roan Holdings had a buy-side interest in the transaction. To the contrary, the Complaint alleges that "Citizen Buyer and its affiliated entities are managed and controlled by" Woods, Woodard, and Augsburger.[151] The allegation that "funds managed by JVL continued to have an interest" in Citizen III, which was created in 2017,[152] does not create a pleadings-stage inference that Lovoi, JVL, or Roan Holdings stood on both sides of the transaction.[153] The Complaint does not allege anything about that supposed "interest" held by funds managed by JVL, let alone a buy-side interest in the Merger. Thus, Plaintiff cannot even satisfy her own (inaccurate) articulation of the law concerning conflicted fiduciaries. The Complaint does not allege that Lovoi, JVL,

---

[151] Compl. ¶ 3.

[152] *Id.* ¶ 66 (italics omitted).

[153] Furthermore, this allegation is contradicted in the very next paragraph of the Complaint, which alleges: "Citizen Buyer . . . appears to wholly own Citizen III." *Id.* ¶ 67.

or Roan Holdings had "an economic interest in the buyer."[154] Accordingly, Plaintiff has not alleged that Lovoi, JVL, or Roan Holdings stood on both sides of the transaction, triggering entire fairness review.

### b. Lovoi, JVL, and Roan Holdings Did Not Receive a Unique Benefit Not Shared with the Other Stockholders.

"The second variety of controller transactions implicating entire fairness review involves situations where the controller does not stand on both sides of the transaction, but nonetheless receives different consideration or derives some unique benefit from the transaction not shared with the common stockholders." *Crimson*, 2014 WL 5449419, at *12. Plaintiff contends that Lovoi, JVL, and Roan Holdings received two forms of consideration that the remainder of Roan's stockholders did not receive, *i.e.*, the resolution of the Arbitration Action and repayment of the Term Loan.

### i. Resolution of the Arbitration Action

Plaintiff contends that the Citizen Principals used the pending Arbitration Action to pressure Lovoi, JVL, and Roan Holdings into selling Roan at an unfair

---

[154] *See* Pl.'s Ans. Br. 28. Plaintiff contends she has further established that Lovoi, JVL, and Roan Holdings stood on both sides of the Merger because the parties to the Separation Agreement, including Lovoi and JVL, "agreed to enter into a series of transactions," meaning their financial and contractual ties would persist. *Id.* at 26–27 (citing Compl. ¶¶ 66–68, 127). But that vague allegation as to an agreement to enter into unspecified other transactions does not create a reasonable inference that Lovoi, JVL, or Roan Holdings had a financial interest in the buy side of the Merger.

price. In support of her contention, Plaintiff points to the timeline of events.[155] First, the Acquirors, including Citizen Buyer, which was led by the Citizen Principals,[156] approached Lovoi to purchase Roan. Two weeks later, the Citizen Principals filed the Arbitration Action, threatening Lovoi, JVL, and Roan Holdings' control over Roan. And immediately following that filing, the Acquirors offered Lovoi the opportunity to roll over his equity in the event of a merger. Plaintiff asserts that Lovoi, JVL, and Roan Holdings were likely to lose both the Arbitration Action and the related Declaratory Judgment Action and were therefore incentivized to tie "the progression of the Arbitration and Declaratory Judgment Actions to the Merger negotiations" so as to appease the Citizen Principals.[157] According to Plaintiff, the voluntary dismissal of the Declaratory Judgment Action eight days after the signing of the Merger Agreement is further evidence of a "classic *quid pro quo*."[158]

Plaintiff does not allege that Lovoi, JVL, and Roan Holdings were bound to lose the Arbitration Action. Indeed, the facts alleged in the Complaint cannot sustain such a claim. *See In re Riverstone Nat'l, Inc. S'holder Litig.*, 2016 WL 4045411, at *8 (Del. Ch. July 28, 2016) (reasoning that "[i]f a conclusory allegation" relating to

---

[155] *See* Pl.'s Ans. Br. 30–31.

[156] Compl. ¶ 126.

[157] Pl.'s Ans. Br. 31.

[158] *Id.*

potential litigation "was sufficient to show that directors were interested in [a] merger, much ground for strike suits and other mischief would be possible"); *see also In re AmTrust Fin. Servs., Inc. S'holder Litig.*, 2020 WL 914563, at *11 (Del. Ch. Feb. 26, 2020) (agreeing with the reasoning in *Riverstone*). Plaintiff points to an August 15, 2019 hearing in the Declaratory Judgment Action where the court expressed skepticism as to the plaintiffs' ability to challenge the arbitrability of the Arbitration Action. But the issue there was solely whether the claims were arbitrable, not the merits of the Arbitration Action itself.[159]

I am not persuaded that there are well-pleaded facts to support the theory that Lovoi and JVL extracted a unique benefit in the Merger arising from the Arbitration Action to the detriment of Roan's stockholders. Nor does Plaintiff's focus on the timeline lend credence to her theory that Lovoi, JVL, and Roan Holdings obtained a unique benefit by settling the Arbitration Action. The Roan Board had already been approached with a potential offer prior to the commencement of the Arbitration Action. Thus, the Complaint does not allege well-pleaded facts that Lovoi or JVL initiated the sale process, let alone having done so out of concern over a potential claim by Woods, Woodard, and Augsburger over Roan Holdings. Furthermore, given his significant equity ownership of Roan Holdings, the loss-of-control theory

---

[159] *See Woods*, 2019-0374-AGB, Dkt. 41 at 5:15–6:8, 9:17–10:13.

is unpersuasive. Plaintiff alleges Lovoi and JVL owned over 74% of the Roan Holdings equity, allowing them to control 49.7% of Roan. Lovoi also owned additional shares of Roan separate and apart from Roan Holdings. In the off chance that Lovoi might lose mathematical control over a majority of Roan's voting power in a forced dissolution or distribution, he would still hold the largest block of Roan stock with at least 37%. In addition, Lovoi, Paul Loyd, and Raleigh (two directors that Plaintiff alleges were aligned with Lovoi and JVL) would constitute three of the eight Roan directors, which was classified through the 2020 annual meeting. Thus, the Arbitration Action presented no immediate threat to Lovoi's board seat or those of the Roan Holdings designees.[160] I am therefore not persuaded that the allegations of the Complaint support a reasonable inference that Lovoi, JVL, or Roan Holdings was motivated to sell the Company to Citizen Buyer at an unfair price due to any potential threat of loss of mathematical control over Roan as a result of the Arbitration Action. *See Presidio*, 251 A.3d at 258 (concluding complaint did not support a reasonable inference that controller was motivated to sell the company due to the possibility it would own only 42% of the company's stock and would no longer be able to designate a mathematical majority of the board). There is also no

---

[160] Nor was there a credible threat that Lovoi would be removed as a director. The Roan certificate provides that directors can only be removed at a meeting of stockholders, and stockholders cannot act by written consent. Dkt. 42, Ex. 1 §§ 5.3 & 6.1.

44

allegation whatsoever as to the terms of any resolution of the Arbitration Action. There was no claim in that proceeding for money damages against Lovoi, JVL, or Roan Holdings, and Plaintiff does not allege that Lovoi, JVL, or Roan Holdings was motivated to sell Roan to Citizen Buyer in order to avoid a potential monetary judgment in the Arbitration Action.

The Complaint also contains no allegations that Lovoi unfairly tilted the sale process toward Citizen Buyer. Roan considered at least two other offers once it began the sale process. According to the Complaint, the other two bidders exited the sale process on their own volition. And Plaintiff does not allege that Citizen Buyer's bid was inferior to the other two bids. It is thus not reasonably conceivable that Lovoi, JVL, or Roan Holdings obtained a unique benefit in the Merger due to resolution of the Arbitration Action to the detriment of the other Roan stockholders.

### ii. Repayment of the Term Loan

Plaintiff alleges that Lovoi and JVL obtained a unique financial benefit in the Merger through repayment of the Term Loan. At the time of the Merger, Roan owed JVL and other lenders $50 million that it drew from the Term Loan. Plaintiff does not allege JVL's portion of the Term Loan. Around this time, Roan's net debt "ballooned," and therefore there were "concerns" regarding Roan's ability to repay

45

the Term Loan.[161] According to Plaintiff, the Term Loan's lenders would only receive an immediate and entire repayment of the $50 million Term Loan plus $6,550,807.41 in interest if Roan was sold in an all-cash transaction.[162] Plaintiff argues that Roan could have pursued a more valuable transaction for its stockholders if not for Lovoi's conflict that favored the Merger.[163]

The Complaint only makes conclusory allegations that Roan could have received greater value in an asset sale.[164] Indeed, Roan engaged with financial advisors to consider strategic alternatives *and* entertained offers from multiple bidders.[165] Plaintiff has not pleaded that any of the other options that Roan evaluated would have been more lucrative for its stockholders. Nor does Plaintiff allege that these alternatives would not have constituted a change of control under the Term Loan. The Complaint quotes a letter that was sent by one of Roan's largest stockholders, Pelican Bay Capital Management, LLC ("Pelican Bay"), to the Board voicing its "strong disagreement" with the Merger to bolster its argument, but that

---

[161] Pl.'s Ans. Br. 34; *see* Compl. ¶¶ 135–36.

[162] *See* Pl.'s Ans. Br. 34; Compl. ¶¶ 136–37.

[163] *See* Pl.'s Ans. Br. 34; Compl. ¶ 137.

[164] *See* Compl. ¶¶ 136–37.

[165] *Id.* ¶¶ 95, 98–99; Proxy at 37 ("On May 20, 2019, the Company publicly announced that it had engaged the Financial Advisors to assist the Company in evaluating strategic alternatives.").

letter is likewise conclusory.[166] While Pelican Bay argued that Roan received higher price targets by investment banking analysts, it did not state that a better deal was available.

Plaintiff does not contend that the terms of the Term Loan itself were unfair and conceded as much at oral argument.[167] Instead, Plaintiff relies entirely on the Term Loan's existence to argue that Lovoi was improperly incentivized to pursue an all-cash transaction, which would trigger a repayment of the Term Loan before the Company became illiquid.[168] The Term Loan was negotiated, however, while the Company was actively pursuing a deal that would likely result in a change in control, and would thus be aware that a transaction would likely trigger the Term Loan's change in control provision. Furthermore, following the Term Loan's negotiation, all three initial proposals—contemplating either mergers or an acquisition—would surely have constituted a change in control.

Plaintiff's authority is also unpersuasive. In *New Jersey Carpenters Pension Fund v. Infogroup, Inc.*, 2011 WL 4825888 (Del. Ch. Sept. 30, 2011), the court held that a director was interested in a merger where the complaint had pleaded facts

---

[166] *See id.* ¶¶ 116–17.

[167] Hrg. 55:15–18 ("We're not challenging the terms of the loan. We're saying that the fact that JVL gave a loan, which the circumstances may be suspect or not, but that's irrelevant for me.").

[168] Pl.'s Ans. Br. 35–36; Hrg. 55:19–21 ("What's relevant is [Lovoi] only would get it paid back if the merger took place, and that's a unique benefit.").

demonstrating the director's "desperate need of liquidity." *Id.* at \*9–10. There, the court found that the plaintiff had pleaded a "confluence of factors" evidencing that liquidity was material to this director: he had debts exceeding $25 million, was starting a business that would require "a significant amount of cash to fund the company's launch," and "had no discernible, significant sources of cash inflow." *Id.* at \*9. Additionally, the complaint also alleged that the director "could not obtain the necessary magnitude of liquidity, absent a sale of the entire Company or a willingness to accept a significant liquidity discount on the sale of his block of shares." *Id.* In making its determination, the court reasoned that the complaint adequately pleaded that this alleged liquidity benefit was material to the director—a requirement to plead that he was interested in the merger. *Id.* at \*10. Here, however, Plaintiff has not pleaded facts showing that Lovoi or JVL were "desperate" for cash. *Cf. Presidio*, 251 A.3d at 258–59 (rejecting "liquidity-driven conflict theory" where plaintiff pled facts showing controller's "extensive sales of over twenty-one million shares in four secondary offerings" and the additional liquidity that only a merger could provide); *In re Merge Healthcare Inc.*, 2017 WL 395981, at \*8 (Del. Ch. Jan. 30, 2017) (rejecting similar theory where the complaint did not allege that the alleged controller was in financial distress or that his previous sales of stock resembled a "fire sale").

Plaintiff's citation to *In re Ply Gem Industries., Inc. Shareholders Litigation*, 2001 WL 755133 (Del. Ch. June 26, 2001), is also inapt. There, the company's CEO and Chairman of the Board, who owned more than a quarter of the company's outstanding stock, "received payment for the termination of his employment contract and his non-competition agreement and the forgiveness of his debt to [the company]" following the sale of the company. *Id.* at *6. The court determined that the CEO was interested in the transaction because the payment he received was a personal benefit that was not shared by the company's other shareholders. *See id.* Here, the Complaint does not allege that Lovoi secured any of the personal benefits that were obtained by the CEO in *Ply Gem*. And while, in *Ply Gem*, the CEO owed a debt to the company, here, Roan owed JVL a portion of the Term Loan repayment.

Plaintiff has not demonstrated that Roan's stockholders would have otherwise received additional consideration but for the Term Loan's repayment—a requirement to establish that a conflict existed. *See Martha Stewart Living*, 2017 WL 3568089, at *13 & n.50 (recognizing that, to sustain a disparate consideration claim, plaintiff must allege facts that, but for an improper side payment, the consideration would have gone to the stockholders); *In re Straight Path Commc'ns, Inc. Consol. S'holder Litig.*, 2018 WL 3120804, at *13 (Del. Ch. June 25, 2018) (holding allegations that controlling stockholder insisted on settlement of indemnification claim supported a reasonable inference that the controller

49

"improperly diverted proceeds that would have, if [he] had acted properly, ended up in the consideration paid to the target stockholders" (quoting *Golaine v. Edwards*, 1999 WL 1271882, at \*9 (Del Ch. Dec. 21, 1999))). It is thus not reasonably conceivable that Lovoi or JVL obtained a unique benefit and, thus, was conflicted due to the Term Loan.

* * *

Plaintiff has not alleged well-pleaded facts to create a reasonable inference that Lovoi, JVL, Roan Holdings, Paul Loyd, or Raleigh either stood on both sides of the Merger or obtained a unique benefit to the detriment of the other stockholders. Therefore, the Complaint does not state a claim against those defendants as conflicted controlling stockholders subject to entire fairness review of the Merger. Accordingly, *Corwin* cleansing is available.

### C.    *Corwin* **Cleansing Applies.**

Plaintiff argues that even if the Merger is not subject to entire fairness review *ab initio*, it should still be subject to heightened scrutiny under *Revlon*. Defendants argue that Plaintiff has not stated a claim under *Revlon*, and Plaintiff's claims must be dismissed under *Corwin*.

"[W]hen a transaction not subject to the entire fairness standard is approved by a fully informed, uncoerced vote of the disinterested stockholders, the business judgment rule applies." *Corwin*, 125 A.3d at 309. Thus, an "uncoerced, informed

50

stockholder vote is outcome-determinative, even if *Revlon* applied to the merger."

*Id.* at 308. Plaintiff does not argue that the stockholder vote was coerced. Plaintiff contends that *Corwin* does not apply because the vote was uninformed.

To determine the adequacy of the stockholder vote at the pleadings stage, the court must consider whether the "complaint, when fairly read, supports a rational inference that material facts were not disclosed or that the disclosed information was otherwise materially misleading." *Morrison v. Berry*, 191 A.3d 268, 282 (Del. 2018). In this context, the materiality standard text is as follows:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. Framed differently, an omitted fact is material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available. But, to be sure, this materiality test does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote.

*Id.* at 282–83 (internal quotations and citations omitted); *accord Mindbody*, 2020 WL 5870084, at *26.

"[T]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Malpiede v. Townson*, 780 A.2d 1075, 1086 (Del. 2001) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). "While disclosure allegations 'need not be pleaded with

particularity,' some factual basis must be provided from which the Court can infer materiality of an identified omitted fact." *In re Novell, Inc. S'holder Litig.*, 2013 WL 322560, at *13 (Del. Ch. Jan. 3, 2013) (quoting *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 146 (Del. 1997)).

"Although a defendant asserting a defense under *Corwin* bears the burden of proving at trial that the stockholder vote was fully informed, a plaintiff bears the burden to plead disclosure deficiencies." *Mindbody*, 2020 WL 5870084, at *26 (citing *In re Solera Hldgs., Inc. S'holder Litig.*, 2017 WL 57839, at *7–8 (Del. Ch. Jan. 5, 2017)).

### 1. Relationships Between Roan and Citizen Buyer

Plaintiff argues that the Proxy failed to disclose numerous preexisting relationships and conflicts of interest between Roan and Citizen Buyer's leadership. First, Plaintiff vaguely argues that "the Proxy failed to clearly and candidly disclose the long-standing, preexisting relationship and conflicting contractual and fiduciaries [*sic*] duties between Citizen Buyer's Principals and the Controllers."[169] Plaintiff provides no further clarity as to this assertion beyond stating that the Alleged Controllers had some unspecified "financial interests in a sale to Citizen

---

[169] Pl.'s Ans. Br. 38; *see* Compl. ¶ 139 ("[T]he Proxy failed to clearly and candidly disclose the long-standing, preexisting relationship between the leadership of Citizen Buyer (Woods, Woodard, and Augsburger) and [Roan's] controlling stockholders and affiliated directors (Lovoi/JVL, Paul Loyd, Raleigh, Roan Holdings, and Tripodo).").

Buyer," citing her brief's entire statement of facts and over one-third of the Complaint.[170] *See Loudon*, 700 A.2d at 141 ("a pleader must allege that facts are missing from the proxy statement, identify those facts, state why they meet the materiality standard and how the omission caused injury"); *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65–66 (Del. 1995) ("Conclusory allegations will not be accepted as true without specific supporting factual allegations. Non-disclosure claims must provide some basis for a court to infer that the alleged omissions were material." (citations omitted)). I have already determined that the Complaint lacks well-pleaded allegations that any of the Defendants was a conflicted controlling stockholder in the Merger, and Plaintiff alleges no well-pleaded facts that any Defendant had a financial interest in Citizen Buyer.[171]

Plaintiff alleges that the Proxy should have disclosed that the Citizen Principals "and their network of friends and family" collectively owned 26% of Roan Holdings and that Woods served on Roan Holdings' board of managers.[172] The Proxy discloses that JVL beneficially owns approximately 74.14% of Roan

---

[170] Pl.'s Ans. Br. 38–39.

[171] Plaintiff alleges Citizen Buyer was wholly owned by Citizen Holdings and that Citizen Buyer "appears to wholly own Citizen III." Compl. ¶ 67. There is no allegation that any Defendant has any ownership interest in any of those entities.

[172] Compl. ¶ 139.

Holdings.[173]  And the Supplement discloses that "[a]n affiliate of Citizen [Buyer] owns a 7.6% interest in Roan Holdings" and "an officer of Citizen [Buyer] is a manager on the board of managers of Roan Holdings."[174]  Plaintiff does not dispute that these disclosures are accurate.  Plaintiff does not allege that the Citizen Principals control the collective 26% of Roan Holdings that they and their network of friends and family own.  Nor does she explain how that minority ownership position of a holding company controlled by Lovoi would be important to a Roan stockholder voting on the Merger.  "Delaware law does not require a play-by-play description of every consideration or action taken by a Board, especially when such information would tend to confuse stockholders or inundate them with an overload of information."  *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 511–12 (Del. Ch. 2010).  Without further, relevant context, disclosing the collective, minority ownership of Roan Holdings would likely confuse rather than inform a reasonable stockholder.  Nor does Plaintiff explain why identifying Woods by name as a manager of Roan Holdings' board significantly adds to the total mix of information already disclosed.  Plaintiff has failed to show why this information would be material.

---

[173] Proxy at 71.

[174] Supplement at 4.

Plaintiff further alleges that the Proxy failed to disclose that Citizen II received a 50% equity interest in Roan that was held in Roan Holdings.[175] Additionally, Plaintiff alleges that because Lovoi controlled Roan Holdings through JVL, the Proxy should have also disclosed that Lovoi managed Citizen II's equity interest in Roan.[176] But the Proxy *does* disclose that Lovoi, through his interests in JVL and Roan Holdings, "may be deemed to share dispositive power over the securities held directly or indirectly by JVL, Roan Holdings and other entities managed by JVL."[177] This disclosure sufficiently explains both Lovoi's and Roan Holdings' relationship with Roan. Indeed, Plaintiff's allegations of Lovoi's control over Roan are based on the Proxy disclosures.[178]

Most of these alleged omissions were either included in the Proxy or the Supplement. Meanwhile, Plaintiff neglects to explain why any of these omissions were material or, at a minimum, provide the court with a factual basis from which to infer materiality. The court has remained unconvinced of Plaintiff's theory that the Merger was inherently conflicted due to a "complicated web of preexisting investments and contracts" and it will not labor to infer such a theory on its own.[179]

---

[175] Compl. ¶ 139.

[176] *Id.*

[177] Proxy at 71.

[178] Compl. ¶¶ 120–22.

[179] *Id.* ¶ 11; *see also id.* ¶¶ 4, 129, 141 (repeating this unsubstantiated theory).

*See Novell*, 2013 WL 322560, at \*13 ("While disclosure allegations need not be pleaded with particularity, some factual basis must be provided from which the Court can infer materiality of an identified omitted fact." (internal quotations omitted)).

### 2.    The Arbitration and Declaratory Judgment Actions

Plaintiff contends that the Proxy's omission of the Arbitration and Declaratory Judgment Actions was material.  First, Plaintiff argues that these actions establish that Lovoi and the other Director Defendants owed the Citizen Principals fiduciary duties, which would have been important to a stockholder voting on the Merger.[180] Second, Plaintiff asserts that the Arbitration Action was material because it showed that the Citizen Principals were attempting to wrest control of Roan away from the Alleged Controllers.[181]  Plaintiff argues that this information was material to the extent that the Arbitration Action may have incentivized the Alleged Controllers to sway the sale process toward Citizen Buyer and the Citizen Principals.[182]  I have already found, however, that both of Plaintiff's theories are not reasonably

---

[180] *See* Pl.'s Ans. Br. 43.

[181] *Id.*

[182] *See id.*

conceivable.[183]   Therefore, the omission of both the Arbitration and Declaratory

Judgment Actions was not material.

### 3.      Vinson & Elkins's Alleged Conflict

Plaintiff argues that the Proxy should have disclosed that the law firm advising

Roan during the sale process, Vinson & Elkins ("V&E"), was conflicted while

providing legal advice to the Company.[184]   Plaintiff alleges that V&E was conflicted

in two ways:  (1) by having an interest of its own in Roan LLC and (2) through

representing the Woods, Woodard, and Augsburger "during 2018 and/or 2019 in

conjunction with protecting their interests in [Roan LLC]."[185]   The Complaint

devotes only two sentences to these cursory allegations.[186]   Plaintiff has not

identified or described anything about V&E's purported interest in Roan LLC.  At

---

[183] *See supra* II.A.2.a.i, II.A.2.b.i.

[184] Pl.'s Ans. Br. 44.

[185] Compl. ¶ 143; Pl.'s Ans. Br. 44.

[186] The entirety of the allegation reads:

> *Third*, the Proxy failed to disclose the fact that (1) Vinson & Elkins, L.L.P.—
> the outside counsel that advised the Public Company [Roan] during the sales
> process—had represented the leadership behind Citizen Buyer—Woods,
> Woodard, and Augsburger—during 2018 and/or 2019 in conjunction with
> protecting their interests in [Roan LLC] and (2) Vinson & Elkins had an
> interest in [Roan LLC].  Thus, the management of [Roan] and the four
> directors who are not named as defendants in this action were being advised
> by conflicted legal counsel.

Compl. ¶ 143 (italics in original).  The Complaint also contains an introductory paragraph
that previews this allegation, but provides no further facts.  *See id.* ¶ 13.

oral argument, Plaintiff's counsel admitted that he "doesn't know what the interest is of [V&E] in [Roan LLC]."[187] And a Roan public filing, which is incorporated by reference in the Proxy, directly refutes this allegation, stating that Roan LLC is a "wholly owned subsidiary of [Roan]."[188] This allegation is also directly contradicted in the Complaint, which states that "[Roan LLC] would be reorganized under a newly formed company, [Roan] . . . , which would fully consolidate all interests of [Roan LLC] into [Roan]."[189] Therefore, I find this first allegation to be conclusory and not well pleaded.

Plaintiff also fails to allege any facts or circumstances concerning V&E's past representation of the Citizen Principals or how it presented a potential or actual conflict of interest in advising the Roan Board on the Merger with Citizen Buyer. Plaintiff has not alleged that V&E's prior representation of Woods, Woodard, and Augsburger was related at all to its representation of Roan leading up to the Merger.

In arguing that the above omissions were material, Plaintiff cites two cases, contending that "[a]dvisor conflicts, even potential ones, must be disclosed."[190] The

---

[187] Hrg. 54:2–3.

[188] Roan Resources, Inc., Quarterly Report (Form 10-Q) (June 30, 2019) at 10, available at sec.gov/Archives/edgar/data/1326428/000132642819000015/q22019draft.htm; *see* Proxy at 120 (incorporating Roan's June 30, 2019 10-Q by reference).

[189] Compl. ¶ 77.

[190] Pl.'s Ans. Br. 44.

first, *In re Southern Peru Copper Corp. Shareholder Derivative Litigation*, 52 A.3d 761 (Del. Ch. 2011), *aff'd sub nom. Americas Mining Corp. v. Theriault*, 51 A.3d 1213 (Del. 2012), analyzed the Delaware Supreme Court's opinion *Kahn v. Tremont Corp.*, 694 A.2d 422 (Del. 1997), and noted that the Supreme Court, in its entire fairness analysis, "found problematic" that "supposedly outside directors[]" had selected "advisors who were in some capacity affiliated with the controlling stockholder." *Southern Peru*, 52 A.3d at 790 (citing *Kahn*, 694 A.2d at 426–27). Here, though, Plaintiff does not contend that V&E was affiliated with Citizen Buyer.

The second case cited by Plaintiff, *Morrison v. Berry*, is likewise not analogous to this case. Plaintiff asserts that *Morrison* stands for the proposition that "legal advisor conflicts [are] particularly important given [the] role they play in crafting disclosures."[191] Although advisor conflicts should be disclosed,[192] a plaintiff must provide sufficient facts to establish that the conflict or potential conflict was material. "Allegations that are merely conclusory and lacking factual basis, however, will not survive a motion to dismiss." *Criden v. Steinberg*, 2000

---

[191] *Id.* (bracketing and quotations omitted).

[192] *See In re John Q. Hammons Hotels Inc. S'holder Litig.*, 2009 WL 3165613, at *16 (Del. Ch. Oct. 2, 2009) ("This Court, however, has stressed the importance of disclosure of potential conflicts of interest of financial advisors."); *see, e.g.*, *RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 860–61 (Del. 2015) (holding that proxy should have disclosed seller's financial advisor's pursuit of financing arrangements with potential buyers). There are no allegations that the Proxy did not disclose all material information concerning the Board's financial advisors.

WL 354390, at *2 (Del. Ch. Mar. 23, 2000). The Complaint's conclusory allegations concerning V&E's prior representation of Woods, Woodard, and Augsburger and its unspecified "interest" in Roan LLC do not provide any basis to conclude they would have been material to a Roan stockholder. Therefore, they do not render the stockholder vote uninformed under *Corwin*.

### 4. Maranto's Departure

Plaintiff next contends that the Proxy should have disclosed that Maranto resigned from Roan due to his "very hostile relationship" and disagreements with the Board.[193] According to Plaintiff, the Proxy's omission of these details makes it appear as if Maranto's resignation was "unilateral" and "amicable."[194] Plaintiff, however, has not provided the court with any facts as to the nature of Maranto's hostile relationship or disputes with the Board *i.e.*, a basis "to infer that the alleged [omissions] were material." *See Malpiede*, 780 A.2d at 1087 (Del. 2001) (internal quotations omitted). Nor does the Complaint allege that Maranto's alleged dispute with the Board was even related to the Merger.

---

[193] Compl. ¶¶ 89, 144 (internal quotations omitted). Initially, the Complaint alleges that a press release stated that Maranto's resignation was "not the result of any dispute of disagreement with the Company or any matter related to the Company's operations, policies or practices." *Id.* ¶ 89. Later, the Complaint alleges that this quote came from the Proxy. *Id.* ¶ 144. The Proxy does not appear to include this quote while recounting Maranto's resignation. *See* Proxy at 35. Therefore, I will assume that Plaintiff is alleging a material omission rather than a misstatement.

[194] Compl. ¶ 144.

Plaintiff suggests that the timing of Maranto's departure was suspect because he resigned on the same day that the Acquirors first approached Lovoi about a potential transaction.[195] Thus, Plaintiff argues that due to the timing of Maranto's resignation and "the Proxy's misleading characterization" it is reasonably conceivable that Maranto resigned as a result of the Merger.[196] The court need not make such an inferential leap. Plaintiff's cited authority is also unavailing. In *Gilmartin v. Adobe Resources Corp.*, 1992 WL 71510 (Del. Ch. Apr. 6, 1992), the court held that a proxy statement materially misled investors when it did not indicate that two of the company's directors had expressed to other board members that they believed it was a bad time to sell. 1992 WL 71510, at *10. Here, Plaintiff cannot point to any such definitive statement made by Maranto or any well-pleaded facts to infer that the Proxy's disclosure was materially misleading.

In *Malpiede v. Townson*, the court held that it was reasonable to infer "for notice pleading purposes" that two directors resigned due to a "disagreement over corporate policy" when their resignation occurred "*immediately before*" the board voted to approve a merger. 780 A.2d at 1088 (emphasis added). The court also held that because those directors resigned three months before stockholders were asked to approve the merger agreement, a "significant logical leap" was required "to

---

[195] *See* Pl.'s Ans. Br. 45; Compl. ¶¶ 89, 144.

[196] Pl.'s Ans. Br. 45.

61

suppose that reasonable stockholders would consider this information significant in the total mix of information." *Id.* Here, the Board voted to approve the Merger over five months after Maranto resigned, and the stockholder vote came seven months after the resignation. Thus, in this case, an even greater "logical leap" would be required to find that Maranto's resignation would be significant to a reasonable stockholder.

### 5. The Term Loan's Approval

Plaintiff's last challenge to the Proxy disclosures alleges that the Proxy falsely stated that the special committee that approved the Term Loan (the "Special Committee") was "disinterested."[197] Plaintiff alleges that one of the Special Committee's two members, Tripodo, was in fact beholden to Lovoi, and thus the Special Committee must have been beholden to Lovoi as well.[198] This assertion is frivolous. There is no allegation that Tripodo had any interest in the approval of the Term Loan. He was not a lender and there is no allegation that he stood to gain financially or in any other way from its approval. The mere fact that he is alleged to have been previously selected by JVL to serve on the *Board* does not even suggest that Tripodo was interested in the approval of the Term Loan.

---

[197] Compl. ¶ 145; Pl.'s Ans. Br. 45–46; *see* Proxy at 76.

[198] *See* Compl. ¶¶ 145–46. As noted above, Plaintiff does not allege that the terms of the Term Loan were unfair or that it was the product of a fiduciary breach.

"It is well-settled Delaware law that a director's independence is not compromised simply by virtue of being nominated to a board by an interested stockholder." *In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 996 (Del. Ch. 2014) (collecting cases), *aff'd sub nom. Corwin*, 125 A.3d 304 (Del. 2015). While "personal or other relationships" may cause a director to be beholden to an interested party, *In re Oracle Corp. Deriv. Litig.*, 824 A.2d 917, 938–39 (Del. Ch. 2003) (internal quotations omitted), "[a]llegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence," *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004).

> Our law is clear that mere allegations that directors are friendly with, travel in the same social circles, or have past business relationships with the proponent of a transaction or the person they are investigating, are not enough to rebut the presumption of independence. Rather, the Supreme Court has made clear that a plaintiff seeking to show that a director was not independent must meet a materiality standard, under which the court must conclude that the director in question's material ties to the person whose proposal or actions she is evaluating are sufficiently substantial that she cannot objectively fulfill her fiduciary duties.

*In re MFW S'holders Litig.*, 67 A.3d 496, 509 (Del. Ch. 2013) (footnotes omitted), *aff'd sub nom. Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014).

With no citation to authority, Plaintiff contends that Tripodo was conflicted because he (1) was "hand-picked" as a Roan-director by JVL; (2) worked as a consultant for Roan LLC in 2018; and (3) "served for almost a decade as an officer

63

and director of another company [Helix Energy Solutions Group, Inc. ("Helix")] in which Lovoi/JVL had significant holdings, positions from which he received millions in compensation and retirement benefits."[199]  When assessed collectively, these allegations do not rise to the level of the materiality standard contemplated by the caselaw.  Plaintiff does not allege that Lovoi chose Tripodo to serve on the Special Committee, but rather only the Board.  Even if Lovoi had selected Tripodo to sit on the Special Committee, that decision would not have been fatal to the Special Committee's independence.  *See Se. Pa. Transp. Auth. v. Volgenau*, 2013 WL 4009193, at *5 n.39 (Del. Ch. Aug. 5, 2013) ("Although not fatal to the independence of the Special Committee, [the controller's] selection of the majority of the committee's members was not 'the best practice.'" (citations omitted)), *aff'd*, 91 A.3d 562 (Del. 2014).

The remaining two allegations merely constitute, at best, attenuated past business relationships.  Nothing about Tripodo's consulting work for Roan LLC suggests that he would have been beholden to Lovoi.  Plaintiff does not allege that Tripodo's position as a Roan LLC consultant was contingent on Lovoi or that Lovoi was responsible for his hiring there.  There is no allegation that Tripodo's compensation from this arrangement was material to him.  Plaintiff similarly fails to

---

[199] Pl.'s Ans. Br. 46; *see* Compl. ¶¶ 75, 125.

allege facts that would suggest Tripodo lacked independence from Lovoi or JVL arising from Tripodo's prior employment at Helix. While Lovoi and JVL are alleged to have been "one of Helix's largest shareholders," Plaintiff does not allege that Lovoi or JVL were responsible for Tripodo's attaining or maintaining his position, had any influence over his maintaining that position, or in setting Tripodo's compensation at Helix.[200] And the Complaint is devoid of allegations that Helix was controlled by either JVL or Lovoi. There are no allegations suggesting that Tripodo's *past* employment at Helix rendered him beholden to Lovoi or JVL or that Tripodo lacked independence from them. Furthermore, Plaintiff does not allege that Lovoi and Tripodo had any personal or professional relationship during Tripodo's time at either Helix or Roan LLC. The allegations of the Complaint do not come close to a reasonable inference that Tripodo was interested as to the Term Loan or the Merger, or that he was not independent.

*     *     *

Under *Corwin*, the business judgment rule will be invoked when a transaction is not subject to entire fairness *ab initio* and has been approved by a "fully informed, uncoerced majority of the disinterested stockholders." *Corwin*, 125 A.3d at 312.

---

[200] Compl. ¶ 125.

Having concluded that the stockholders were fully informed when they voted on the Merger, any *Revlon* claim is "cleansed" under *Corwin*.

**D.     Even Without Corwin Cleansing, Plaintiff's Fiduciary Duty Claims Must be Dismissed.**

Even if *Corwin* is not satisfied, Plaintiff has not stated a claim for breach of fiduciary duty giving rise to money damages against any of the Defendants.

**1.     Plaintiff Has Not Stated a Claim Under *Revlon* Against the Alleged Controllers or the Director Defendants.**

The parties dispute whether, absent *Corwin* cleansing, the complaint states a claim against the Alleged Controllers and the Director Defendants under *Revlon*. Defendants contend that, because Lovoi (or any of the other Alleged Controllers) was not conflicted in the Merger, the business judgment standard applies.[201]  For this, Defendants rely on *In re Synthes, Inc. Shareholder Litigation*, 50 A.3d 1022 (Del. Ch. 2012), a pre-*Corwin* decision of this court, holding that the business judgment standard applied where the controlling stockholder was not conflicted in a merger in which all stockholders received the same consideration.  50 A.3d at 1035. Plaintiff, however, contends that the Complaint still states a claim against the Alleged Controllers under *Revlon*.[202]

---

[201] Defs.' Op. Br. 22–23.

[202] In *Presidio*, Vice Chancellor Laster noted that under *McMullin v. Beran*, 765 A.2d 910 (Del. 2000), the Delaware Supreme Court applied enhanced scrutiny to a controller's

Defendants contend that the Complaint fails to allege a claim for breach of fiduciary duty under *Revlon* against any of the Defendants. In addition, Defendants maintain that the Complaint does not state a non-exculpated claim against the Director Defendants.

### a. Damages Claims Against the Alleged Controllers

As explained above, the Complaint does not allege well-pleaded facts creating a reasonable inference that either Lovoi, JVL, Roan Holdings, Paul Loyd, or Raleigh was a conflicted controlling stockholder in the Merger. "Because [their] interests were aligned with those of the stockholders as a whole, the only possible theory of recovery would be for a breach of the duty of care." *Presidio*, 251 A.3d at 284. Assuming, without deciding, that the Alleged Controllers could be subject to a claim of a breach of the duty of care in this circumstance, the Complaint does not allege facts to support one.

---

decision to sell its controlled subsidiary, even in a transaction in which the controller and the other stockholders received the same consideration. *Presidio*, 251 A.3d at 265. The Vice Chancellor reasoned that maintaining the "safe harbor" of *Synthes* in light of the Supreme Court's post-*Synthes* decision in *Corwin* would "conflict with *Corwin* by bestowing the protections of the business judgment rule without the fully informed stockholder vote that *Corwin* deemed crucial." *Id.* at 266. The court emphasized, however, that applying enhanced scrutiny in this context absent *Corwin* cleansing did not require abandoning the core holding of *Synthes*, which is that entire fairness does not apply to a controlling stockholder in a transaction "unless the controller either (i) stood on both sides of the transaction or (ii) used the transaction to extract a benefit not shared by the stockholders as a whole." *Id.*

To plead a duty of care claim against the Alleged Controllers, Plaintiff must allege well-pleaded facts to support a reasonable inference that the Alleged Controllers acted with "gross negligence." *Id.* at 287. "In the corporate context, gross negligence means reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason." *Id*. (quoting *Tomczak v. Morton Thiokol, Inc.*, 1990 WL 42607, at *12 (Del. Ch. Apr. 5, 1990) (internal quotations omitted)).

The Complaint does not contend that the Alleged Controllers acted with recklessness. Nor are there any well-pleaded allegations that either Lovoi, JVL, or Roan Holdings engaged in any conduct rising to the level of recklessness.[203] There are no well-pleaded allegations that any of the Alleged Controllers exercised undue influence on the other directors, steered the process to any particular bidder, or took action to exclude potential bidders. As alleged controllers of approximately 50% of Roan's outstanding common stock, the Alleged Controllers had an interest in obtaining the best price reasonably available and, thus, their interests were aligned

---

[203] The Complaint does not allege facts creating a reasonable inference that a majority of the Board lacked independence or were beholden to any of the Alleged Controllers. The Plaintiff concedes that the three non-Defendant directors are independent and disinterested. Plaintiff also has not asserted claims against Gideon or Mills in their capacities as directors, and there are no well-pleaded allegations that they lacked independence, were not disinterested, or were beholden to any of the Alleged Controllers. And as discussed above, the allegations of the Complaint fall far short of creating a reasonable inference that Tripodo was conflicted, lacked independence, or was beholden to Lovoi, JVL, or Roan Holdings, or anyone else for that matter.

with those of the other stockholders. The bare allegation that the Alleged Controllers "capped the price of ROAN stock at a price that did not adequately reflect its true value" is conclusory.[204] Thus, the Complaint fails to state a claim for monetary damages against the Alleged Controllers.

### b. Damages Claims Against the Director Defendants

As mentioned above, Roan's certificate of incorporation exculpates the Company's directors from liability arising from a breach of their fiduciary duties to the fullest extent that Delaware law allows.[205] Delaware law permits a corporation to exculpate its directors from "monetary liability for a breach of the duty of care, but not for conduct that is not in good faith or a breach of the duty of loyalty." *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 367 (Del. 2006); *see* 8 *Del. C.* § 102(b)(7). Therefore, to successfully plead a claim under *Revlon* as to the Director Defendants, Plaintiff must allege that the Director Defendants breached their duties of loyalty or acted in bad faith. *Presidio*, 251 A.3d at 283 (citing *Cornerstone*, 115 A.3d at 1175–76); *see e.g.*, *Rudd v. Brown*, 2020 WL 5494526, at *13 (Del. Ch. Sept. 11, 2020) (dismissing complaint that failed to plead a non-exculpated breach of fiduciary duty claim under *Revlon* alleging that directors were

---

[204] Compl. ¶ 166.

[205] Dkt. 42, Ex. 1 art. IX.

conflicted); *van der Fluit v. Yates*, 2017 WL 5953514, at \*12 (Del. Ch. Nov. 30, 2017) (same).

Plaintiff's argument in support of the fiduciary duty claims against the Director Defendants merely rehashes the arguments and generally relies on the same facts asserted against the Alleged Controllers. Plaintiff argues that three of Roan's eight directors were beholden to Lovoi. Because Lovoi was a director himself, Plaintiff argues Lovoi would have "effective control over half the Board."[206] As explained above, however, the Complaint contains no well-pleaded allegations creating a reasonable inference that Tripodo lacked independence, was interested in the transaction, or was otherwise beholden to anyone.[207] Furthermore, as explained above, the Complaint lacks any well-pleaded allegations that Lovoi, JVL, or Roan Holdings was conflicted.

Plaintiff also contends that Lovoi favored a deal with Citizen Buyer.[208] Plaintiff, however, does not allege well-pleaded facts creating a reasonable inference that anything about the sale process was unfair, let alone rising to the level of bad

[206] Pl.'s Ans. Br. 56.

[207] Because I conclude that there is no pleadings-stage inference that a majority of the Board lacked independence or was interested in the transaction, I need not separately reach the allegations as to Paul Loyd and Raleigh. Those allegations are essentially the same allegations against Lovoi and JVL, which Plaintiff seeks to impute to Paul Loyd and Raleigh due to their having been selected for appointment to the Roan Board by Lovoi and JVL.

[208] Pl.'s Ans. Br. 56.

70

faith. Plaintiff alleges, the Board had other alternatives to a potential Merger, such as selling individual assets,[209] but that does not constitute an unreasonable process, let alone bad faith. *See Paramount Commc'ns*, 637 A.2d at 45 ("If a board selected one of several reasonable alternatives, a court should not second-guess that choice even though it might have decided otherwise or subsequent events may have cast doubt on the board's determination."); *see also In re Dollar Thrifty S'holder Litig.*, 14 A.3d 573, 595 (Del. Ch. 2010) ("As is well known, *Revlon* does not require that a board, in determining the value-maximizing transaction, follow any specific plan or roadmap in meeting its duty to take reasonable steps to secure—i.e., actually attain—the best immediate value."). Plaintiff alleges that during substantive negotiations "Citizen Buyer repeatedly secured concession after concession from the Director Defendants on crucial Merger Agreement terms (like the Board's ability to change its recommendation absent a superior proposal)."[210] But the Complaint does not describe the concession concerning the ability to change its recommendation absent a superior proposal and does not identify any other concession. It is, in other words, a conclusory allegation.

Plaintiff makes no well-pleaded allegations suggesting that Lovoi steered the process toward Citizen Buyer, interfered in the negotiations with other bidders, or

---

[209] *E.g.*, Compl. ¶¶ 9, 126, 133.

[210] *Id.* ¶ 104.

even initiated the sale process. Nor does Plaintiff challenge, let alone identify, any of the Merger's deal protection measures. When the sale process had begun, the Company negotiated with the Acquirors for over five months and considered other offers from as well. And during that time, the Board contacted 44 potential counterparties and entered into 20 confidentiality agreements with potential bidders.[211]

Plaintiff also argues that the Director Defendants breached their duty of loyalty and acted in bad faith due to their "intentional failure" to disclose the Alleged Controllers "fiduciary duties to, affiliations with, and financial interests in Citizen Buyer's Principals and affiliates."[212] The only allegation of bad faith is a blanket assertion that "these bad faith disclosure violations were intentionally designed to hide the glaring conflicts of interest that tainted the Merger."[213] As explained above, these disclosure allegations are not well-pleaded, and in any event, do not support a reasonable inference that any of the alleged misstatements or omissions was intentional or constituted bad faith. Therefore, this claim also cannot survive Defendants' motion to dismiss.

---

[211] Proxy at 38.

[212] Pl.'s Ans. Br. 54–55.

[213] Compl. ¶ 148.

### 2. The Complaint Does Not State a Disclosure Claim Against the Officer Defendants.

Count III alleges that Mills and Gideon breached their fiduciary duties as officers of the Company. Plaintiff alleges that Mills breached his fiduciary duties through his "conduct as an officer during the sales process."[214] Plaintiff also alleges that Mills and Gideon breached their fiduciary duties as officers by being involved in the preparation of the Proxy and "allow[ing] the Proxy to omit . . . material facts and details regarding the conflicts of interest that permeated the sales process."[215]

Officers owe the same fiduciary duties as directors of Delaware corporations. *Gantler v. Stephens*, 965 A.2d 695, 708 (Del. 2009). Unlike directors, they are not covered in that capacity under an exculpation provision under 8 *Del. C.* § 102(b)(7). *Gantler*, 965 A.2d at 709 n.37. To state a claim against the Officer Defendants, the Complaint must allege facts from which it is reasonably conceivable that the Officer Defendants' conduct was grossly negligent, *i.e.*, rising to the level of recklessness. *In re Baker Hughes Inc. Merger Litig.*, 2020 WL 6281427, at *15 (Del. Ch. Oct. 27, 2020).

The allegations concerning Mills's involvement in the Merger negotiations do not give rise to an inference of gross negligence. The Complaint merely recites

---

[214] *Id.* ¶ 171.
[215] *Id.* ¶ 173.

meetings he had with potential bidders about a potential transaction, informing the Board about his discussions, seeking Board authority for certain actions, and following the Board's instructions to contact financial advisory firms.[216] The broad, generalized assertion that Mills allowed the Company to be sold "despite the glaring conflicts of interest," "failed to enact protections . . . to guard against such conflicts," and "acquiesced to the sale of ROAN at a price that was grossly insufficient" does not state a claim.[217] First, the alleged conflicts are based on the faulty assertion that Lovoi, JVL, and Roan Holdings were conflicted in the Merger. Second, the Complaint does not allege what protections Mills was required to or could have "enacted" as an officer. Third, Plaintiff does not even attempt to articulate how, as an officer, Mills "acquiesced to the sale" of the Company at a "grossly insufficient" price, or how that gives rise to a breach of duty as an officer. Nor does Plaintiff back her allegations with any facts as to Mills's conduct.

As discussed above, the Complaint does not state a claim that the Proxy contained material omissions or inaccurate disclosures. Even if any of the alleged omissions or inaccurate disclosures were material, I am not persuaded that they were

---

[216] *Id.* ¶ 170.

[217] *See id.* ¶ 171.

74

the product of gross negligence on the part of Mills or Gideon in their capacities as officers of the Company.[218]

A corporate officer who prepares a materially misleading proxy statement may be liable for breach of his or her fiduciary duties. *In re Hansen Med., Inc. S'holders Litig.*, 2018 WL 3025525, at *11 (Del. Ch. June 18, 2018) (holding that a complaint stated a claim against an officer for violation of the fiduciary duty of disclosure and noting that directors and officers of a corporation generally owe the same fiduciary duties); *see also Teamsters Loc. 237 Additional Sec. Benefit Fund v. Caruso*, 2021 WL 3883932, at *26 (Del. Ch. Aug. 31, 2021); *Baker Hughes*, 2020 WL 6281427, at *15–16; *City of Warren Gen. Emps.' Ret. Sys. v. Roche*, 2020 WL 7023896, at *18 (Del. Ch. Nov. 30, 2020); *Morrison*, 2019 WL 7369431, at *25, 27.

The Complaint alleges that the Officer Defendants were "intricately involved in the sales process and Proxy preparation process."[219] As a threshold matter, the allegation that Mills had any involvement in preparing the Proxy as an officer is conclusory and contradicted by the allegations of the Complaint. Mills ceased being

---

[218] Plaintiff did not defend this claim in her briefing or at oral argument. Indeed, Plaintiff chides Defendants for "try[ing] to bolster" Mills's independence, insisting that the Officer Defendants have only been named for failing to fulfill their duty of disclosure. Pl.'s Ans. Br. 54 n.6; *see also id.* at 58 (defending claim against the Officer Defendants only to the extent that they breached their "duty of candor as officers").

[219] Compl. ¶ 173.

an officer no later than the date that the Board approved the Merger Agreement.[220] There is no allegation that the Proxy was prepared before that date. Therefore, to the extent that he had any role in preparing the Proxy, the Complaint alleges no well-pleaded facts that Mills did so while he was an officer of the Company.

Gideon signed the Proxy in his capacity as Roan's CEO.[221] Therefore, Gideon could have been liable, if any of the above disclosure claims had been well pleaded. *See Caruso*, 2021 WL 3883932, at *26 (holding CEO could be liable for breach of the duty of care for a misleading proxy disclosure where he "played an integral role" during the merger negotiations and signed the proxy); *Roche*, 2020 WL 7023896, at *18 (same); *Baker Hughes*, 2020 WL 6281427, at *15–16 (same); *Hansen Med.*, 2018 WL 3025525, at *11 ("Vance affixed his signature to the Proxy in his capacity as President and CEO and presented the information to the stockholders for their consideration. This means he may be liable for material misstatements in the Proxy in his capacity as an officer [and] as a director.").

---

[220] Roan Resources, Inc., Current Report (Form 8-K) (October 1, 2019) at 5, available at https://www.sec.gov/Archives/edgar/data/0001326428/000119312519259889/d808728d8 k.htm. The October 1 press release announcing Gideon's hiring explains that his hiring became effective two days earlier. *Id.* The press release also states that Mills's last day as an officer was retroactively adjusted to coincide with Gideon's official September 29 start date. *Id.* Despite the Board's retroactive adjustment, however, I cannot simply ignore that, during this two-day period, Mills was operating as an officer under the authority of the Roan Board. Nevertheless, it does not affect my conclusion that the Complaint fails to allege well-pleaded facts that Mills was involved in drafting the Proxy as an officer.

[221] Compl. ¶¶ 172–73.

Although Gideon signed the Proxy in his capacity as CEO, he did not become an officer until a few days before the Board approved the Merger Agreement. There are no allegations that he was involved in the Merger negotiations or the events and transactions upon which Plaintiff's disclosure claims are based. Gideon was a former LINN executive. There are no allegations that he had any affiliation with Lovoi, JVL, Citizen Buyer, or any of Citizen Buyer's affiliates. To the extent any of Plaintiff's disclosure claims had merit, the Complaint lacks well-pleaded facts that Gideon was grossly negligent in preparing the Proxy statement.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.